# Staunton

STONEGAP COLLIERY COMPANY V. KELLY & VICARS.

September 11, 1913.

Absent, Keith, P.

1. LANDLORD AND TENANT—*Lease—Construction—Intention of Parties.*
The language of a lease which is fairly susceptible of two constructions, is to be taken most strongly against the lessor. Furthermore, the intention of the parties must be ascertained by reference to the entire instrument and not to disjointed parts of it.

2. LANDLORD AND TENANT—*Premises—Collateral and Customary Use—Case in Judgment—Mining Lease—Use of Surface—Buildings for Employees.*—As a general rule, the lessee of real property is entitled to the use of the demised premises for such collateral purposes as are customary in the use of such property, and for any purpose not prohibited by the lease and not amounting to waste or destruction of the subject matter. In the case in judgment, notwithstanding the isolated statement that the lease was "for the purpose of mining coal and manufacturing coke thereon, and therefrom, and selling said coke and coal," looking to° the lease as a whole and the customary use of such property, it was the intention of the parties that the lessee should have, for the purpose of its operations, all of the property rights and privileges owned by the lessors in the premises, and is not accountable to them for the rents of houses which it caused to be erected on the leased premises in the neighborhood of its operations, and which it leased to another until it became necessary for it to use them for its own employees.

Appeal from a decree of the Circuit Court of Wise county. Decree for the complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*Bond & Price, Bullitt & Chalkley* and *White & Case,* for the appellant.

*George C. Perry* and *E. M. Fulton,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This controversy involves the construction and proper interpretation of a certain mining lease entered into between the parties thereto on the 17th of July, 1902. The bill was filed by the appellees seeking to enjoin the appellant from using any of the leased premises for any purpose other than that of mining coal, making coke and selling the same, and that the appellant be especially enjoined from collecting rents from the Currier Lumber Corporation, such rents being claimed by the appellees, and that the appellant be compelled to account to the appellees for all rents, issues and profits that it had theretofore received from the leased premises by uses foreign to the purpose of the lease.

In the progress of the voluminous proceedings which followed, the prayer of the bill was granted, perpetually enjoining the appellant from making the uses of the leased premises complained of, and a final decree was entered awarding a money recovery against the appellant for rents it had 'collected from the occupants of certain houses on the leased premises.

In the view we take of the case we will not stop to consider the demurrer to the bill, which was overruled, but will proceed at once to consider the merits of the controversy.

It appears that in July, 1902, the appellant leased from the appellees a contiguous boundary of land containing approximately 5,700 acres, for the purpose of mining coal, making coke and selling the same. This body of land is made up of numerous smaller tracts acquired by the lessors

at different times, and much of it has no mineral value, but is only valuable for its uses in connection with that part where the mining operations are carried on. It further appears that in order to provide in an economical way against the increasing demand for tenement houses expected to result from the development of the mines, appellant, in November, 1905, entered into an agreement with R. D. Benson, trustee, who had large timber and stave mills on an adjacent tract of land, by which it leased to him 5.84 acres of the leased premises and permitted him to erect thereon a number of houses, to occupy the same for a period of ten years, paying a nominal rent therefor of $25.00 per year, and at the end of said period the land and houses to revert to the appellant. In September, 1908, the Currier Lumber Corporation, successor to R. D. Benson, trustee, leased from appellant a number of these houses for a period of eight months at $10 each per month. The right of appellant to make these contracts and derive the benefits flowing from them is the question involved in this litigation.

The deed of lease is to be regarded in the light of the following well known rules of construction: (1) The language of the contract is to be construed most strongly against the grantor; and (2) The intention of the parties must be ascertained by reference to the entire instrument and not to disjointed parts of it. 2 Min. Inst. 1056, 1058.

In *Chamberlain* v. *Brown,* 141 Iowa 546, 120 N. W. 338, the court says: "There is another familiar rule applicable to cases of this kind that, if the meaning and effect of the lease be fairly capable of two constructions, that will be adopted which is most favorable to the lessee."

"Those things which are appurtenant to a mine will pass under a lease of the mine as a necessary part thereof, although not mentioned in the lease." 27 Cyc. 700. See also Devlin on Deeds, sec. 863.

In *City of New York* v. *Interborough R. T. Co.*, 125 N. Y. App. Div. 437, 109 N. Y. Supp. 885, the court says: "This is a recognition of the right of the lessee to use the demised premises for such collateral purposes as such property might be customarily used. A lessee of real property is entitled to the exclusive use of the demised premises for any purpose not prohibited by the lease, not amounting to waste or destruction of the subject matter. This is the general rule."

"The grant of a thing passes the incident as well as the principal, though the latter only is mentioned; and this cannot be avoided without an express reservation. . . . A grant of a thing will include whatever the grantor had power to convey, which is reasonably necessary to the enjoyment of the thing granted." *Riddle* v. *Littlefield,* 53 N. H., 16 Am. Rep. 388.

The first clause of the lease provides as follows: "The lessors hereby lease to the lessee, its successors and assigns, for the purpose of mining coal and manufacturing coke thereon and therefrom; and selling said coke and coal, the following tracts or boundaries of coal lands or coal rights and surface rights owned by the lessors near the town of Wise, Wise county, Virginia." Then follows the description of eighty-six different tracts or parcels of land, some of which were owned in entirety by the lessors and as to others they only owned the coal and other minerals, together with certain mining rights and privileges, and as to others they only owned the surface. This description of the several properties is followed by the following clause: "All of the rights and privileges which have been granted by the various grantors hereinbefore named to either the said Kelly or said Vicars, or by any other grantor or grantors, to them or either of them for any of the land, coal, surface, or mining rights and privileges, hereinbefore specifically described and not herein excepted or reserved, and

which the said lessors now own shall pass to the lessee under this lease; but it is understood that the said lessors have heretofore sold and conveyed divers tracts, pieces or parcels of surface to various persons, which were conveyed to them by the aforesaid grantors and all of which are reserved from the operation of this lease."

These provisions of the lease constitute all that is essential to be considered in its construction. It seems clear that, under these provisions, the surface rights owned by the lessors are granted to the lessee, certainly all of such rights passed from the lessors. In other words, the whole of the properties owned by the lessors passed to the lessee, together with all rights and privileges appurtenant thereto. If it was the intention of the parties that the lessee should have, for the purpose of its operations, all of the property, rights and privileges owned by the grantors, more apt language to accomplish that purpose could hardly have been employed than that of the two provisions of the deed which have been mentioned. There are no covenants in the deed restraining the beneficial use of the premises granted, and it is obviously inconsistent with the principles upon which a court of equity acts to raise by implication a covenant in restraint of a beneficial use of property. A covenant that premises shall be used by a lessee for a particular specified purpose does not impliedly forbid that they may be used for a similar lawful purpose which is not injurious to the landlord's rights, unless such other use is expressly forbidden. *Reed* v. *Lewis,* 74 Ind. 433, 39 Am. Rep. 88; *San Antonio Brewing Asso.* v. *Brentz,* 39 Tex. Civ. App. 443, 88 S. W. 368.

The law on the subject is stated as follows in 24 Cyc. 1046, citing numerous cases: "The general rule is that by the lease of a building everything which belongs to it, or is used with and appurtenant to it, and which is reasonably essential to its enjoyment, passes as incident to the principal thing and as a part of it unless specially reserved."

And again at page 1061: "Where the contract of lease is silent on the subject, the lessees have, by implication, the right to put the premises to such use and enjoyment as they please, not materially different from that in which they are usually employed, to which they are adapted and for which they are constructed. The law, however, implies an obligation on the part of the lessee to use the property in a proper and tenant-like manner, without exposing the buildings to ruin or waste by acts of omission or commission, and not to put them to a use or employment materially different from that in which they are usually employed, or apparently violative of the spirit and purpose of the lease as such spirit and purpose is evidenced by the recitals therein."

Appellees rely on the alleged implied restriction, that the premises are not to be used for any purpose except "for mining coal, and manufacturing coke, and selling such coal and coke," the contention being that this disjointed sentence raises an implication that the use to be made of the premises and especially the use to be made of the surface is so limited that the lessee cannot make the use thereof that is denied to it in this case by the appellees.

If it were permissible for a court of equity, in the light of the priciples we have cited, to raise by implication a covenant restraining the beneficial use of property, it would be necessary, the deed being silent on the subject, to inquire as to the manner in which premises leased for such purposes are usually employed. The record shows that the uses to which such premises are necessarily put are so extended as to be difficult of mention in detail. It abundantly appears from the testimony of numerous coal operators, men of wide experience in this and other coal fields in West Virginia and Pennsylvania, that it is usual and customary for the lessee to have the possession, control and use of the surface of the leased premises, and especially

that adjacent to the operation, for all purposes. This is necessary, as shown, for many reasons both affirmative and negative. It is necessary for coal operators to build numerous tenement houses for their employees, stores, warehouses, office buildings, hospitals, supply houses, hotels and boarding houses, tipples for loading coal, crushing plants, side tracks, tram roads, motor roads; to erect tanks, dig wells, lay pipes; to have gardens and pastures both for themselves and employees, and many other rights and privileges depending on local conditions. Control of the surface is necessary to enable the operators to keep off persons engaged in selling whiskey, to keep off as far as possible disreputable women and labor agitators. These, among others too numerous to mention in detail, are the purposes to which the coal operator must put the leased premises and the right to so use such premises is necessarily incidental to the lease. Jones on Landlord and Tenant, sec. 382; Taylor on Landlord and Tenant, sec. 161; 24 Cyc. 1061.

It is to be further observed that the action of the parties is significant as showing their intention, and that the construction of the lease now contended for by the appellees is not warranted. It appears that a large part of the leased premises known as the Carter tract, part of which is the land in controversy in this suit, is cleared and has no mining timber upon it and no coal underlying it, and yet it was regarded as so important to the leased premises that the appellant before consummating the lease required the appellees to purchase the tract and include the same in the lease. This was manifestly not done for the purpose of mining coal or cutting timber from such land, for it was known that neither was there, but only because it was regarded as necessary for the lessee to have control of the surface in connection with its contemplated coal and coke operations. Its purchase and inclusion in the lease would

have been a vain and useless thing unless the lessee could use the surface thereof in such manner as seemed to it best for furthering the success of its enterprise.

It further appears that the lessors made no objection to the erection of the houses in controversy on the leased premises, nor have they ever made any expenditure either for building the houses in controversy, or for keeping up repairs or paying the insurance and taxes thereon.   The houses were built under an arrangement made by the lessee for the purpose of providing tenements for its employees when needed.   If under these circumstances the lessors were entitled to the rents of the houses, they would be entitled to the possession, and if so, they would seem to have an equal right to enter and take possession of any other house of the lessee which was not at the time being occupied by an employee connected with its mining operations. Such a right would be repugnant to the letter as well as the spirit of the lease, and such a narrow construction of the lease, if carried to its logical conclusion, would impede and disorganize, if not entirely stop, the operations of the lessee.

In conclusion we are of opinion that the appellant was plainly within its rights in having the houses in controversy erected under the arrangement pointed out, and in renting them to the Currier Lumber Corporation until it became necessary for appellant to use them for its own employees; and, further, that appellant was under no obligation to account to the appellees for the rent of such houses arising from their occupancy by the Currier Lumber Corporation or anyone else.

The decree appealed from must, therefore, be reversed, and this court will enter such decree as the circuit court should have entered, dissolving the injunction in favor of the appellees and dismissing their bill with costs.

*Reversed.*