LOUISE A. BAILEY *vs.* HARRY G. GIPSTEIN ET ALS.

First Judicial District, Hartford, January Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued January 8th—decided March 3d, 1930.

*Ralph O. Wells,* with whom was *Percy S. Bryant,* and, on the brief, *William S. Locke,* for the appellant (defendant The Cereal Products Company).

*J. Agnes Burns* and *John J. Dwyer,* for the appellee (plaintiff).

MALTBIE, J. On December 30th, 1913, the plaintiff executed and delivered a lease of certain premises in Hartford to the defendant Gipstein. To the description of the property leased was added the phrase, "for the purpose of conducting the liquor business therein." The lease specified the rentals to be paid and fixed its term as fifteen years from January 1st, 1914. The only express covenant as to the use of the premises was that the lessee would not occupy them "for any business deemed extra hazardous" without the consent of the lessor. There was a covenant by the lessee in which he agreed to "comply with and conform to all laws of the State of Connecticut, and the by-laws, rules and regulations of the city . . . relating to health, nuisance, fire, highways and sidewalks, so far as the premises hereby leased are or may be concerned, and to save the lessor harmless from all fines, penalties and costs for violation of or noncompliance with the same." It also contained a provision that if at any time during the term "Hartford shall vote 'no license,'" then, and in that event, said party of the second part, or his assignee, is to have the option of declaring this lease null and void." The defendant Shimelman signed a written guarantee annexed to the lease assuring to the plaintiff payment of the rentals due under it.

Gipstein entered into the liquor business on the premises and continued it until November 10th, 1914, when he sold the business to one Kraprizinski and assigned the lease and surrendered the premises to the

Aetna Brewing Company, now the defendant The Cereal Products Company, which in turn, with the written consent of the plaintiff, sublet the premises to Kraprizinski. Kraprizinski continued the liquor business on the premises until national prohibition became effective, January 17th, 1920. Shortly after that the Brewing Company changed its name as above noted and thereafter furnished Kraprizinski with non-alcoholic beverages manufactured by it. He continued to occupy the premises and to sell these products until some time in August, 1923, and during all this time the defendant company, intending to continue the lease in force, paid the rentals provided in it. In the latter part of that month, Kraprizinski ceased doing business on the premises, removed from them and at the direction of the company offered to return the keys to the plaintiff, but she refused to receive them. Neither Gipstein nor the company ever did anything in the nature of an exercise of the option to declare the lease null and void under the provision quoted from the lease. This action is brought to recover the rentals specified in the lease falling due subsequent to August, 1923. The trial court gave judgment for the plaintiff; and The Cereal Products Company and Shimelman filed separate appeals.

The defense offered is that the National Prohibition Act, on becoming effective, operated to render the lease void or at least unenforceable and to destroy the right of the plaintiff to enforce its covenants. The basis of this claim is that the purpose of the lease was the occupation of the premises for carrying on a business in alcoholic beverages, rendered illegal by that Act. We have no doubt that by the words "liquor business" in the lease the parties had in mind at the time it was executed the sale of alcoholic beverages. That is made quite evident by the provision of the lease giving the

lessee the option to declare it void if Hartford should vote "no license." *Kahn* v. *Wilhelm,* 118 Ark. 239, 177 S. W. 403. The difficulty with the claim of the defendant is that we cannot construe the words "for the purpose of conducting the liquor business therein" as amounting to a covenant not to use the premises for any other business. Whether from a statement in a lease of the use to be made of the premises a covenant not to use them for any other purpose is to be implied depends upon the intention of the parties, considering all the terms of the lease and any relevant surrounding facts. *Bovin* v. *Galitzka,* 250 N. Y. 228, 232, 165 N. E. 273; *Chamberlain* v. *Brown,* 141 Iowa, 540, 547, 120 N. W. 334; *Stonegap Colliery Co.* v. *Kelly & Vicars,* 115 Va. 390, 392, 79 S. E. 341; *Reed* v. *Lewis,* 74 Ind. 433, 436; *Burgman* v. *Noyes,* 6 Wis. 1, 11.

The lease before us, unlike that involved in *Goldberg* v. *Callender Brothers, Inc.,* 96 Conn. 182, 113 Atl. 170, does not contain any specific covenant that the premises shall be used only for the liquor business, stated as a condition of the lease, nor is there any covenant that they shall not be occupied for any other purpose than that specified; the only covenant as to the use of the premises is that they shall not be occupied "for any business deemed extra hazardous" without the lessor's consent. The provision giving the lessee the option to declare the lease void if Hartford should vote "no license" is also most significant. In that contingency the lease was to terminate only at the option of the lessee; yet thereafter the sale of liquor on the premises would be illegal. We would hesitate in any event to assume that the parties intended the continued use of the premises for an illegal business, should the lessee not exercise the option, but that they did not so intend is made clear by the covenant we

have quoted, which would continue in effect, imposing an obligation upon the lessee to comply with and conform to the laws of the State; for, not only would the continued sale of alcoholic liquors upon the premises have been illegal, in that contingency, but, by the express declaration of the statute the liquors themselves, if intended for sale, would have been a nuisance. General Statutes, § 2784. On the other hand, it is highly improbable that the parties would have inserted this option provision in the lease, if, in case of failure of the lessee to exercise it, he would continue liable for the rent but have no right to make a beneficial use of the premises. Evidently the lease contemplated, at least in the only aspect reasonably to be foreseen when it was executed, the very situation which occurred, that the sale of liquors on the premises might become illegal, and the intent was to provide that, upon that happening, the lessee might either terminate the lease or continue to occupy the premises for a business not forbidden by law. The conduct of the parties affords strong evidence that this is the true construction of the lease, because from the time when the sale of alcoholic liquors became unlawful, the sublessee of the premises did embark upon the business of selling non-alcoholic beverages and continued to do so for more than three years, rent being paid for all this time and accepted by the plaintiff. In determining the intent of the parties in specifying the use to be made of the premises we quote the view well expressed by the Supreme Court of Michigan in a similar case. "We think the court may take judicial notice of the fact that the use of premises for the sale of liquor at retail is such a use as tends to injure the reputation of the property so used. In inserting in the lease the words quoted, the lessee doubtless desired to have it placed beyond peradventure that it might use the premises

for the purpose named." *Hyatt* v. *Grand Rapids Brewing Co.,* 168 Mich. 360, 363, 134 N. W. 22.

As the lease did not forbid a lawful use of the premises should the sale of liquor become unlawful, and as, after that happened, the premises were only used for a lawful purpose, no taint of illegality affects the lease and the plaintiff was entitled to recover the unpaid rentals.

The defendant Shimelman in his appeal raises certain questions which he claimed as affecting his obligations as a guarantor, but he did not appear in this court to prosecute his appeal either by oral argument or by filing a brief, and we therefore disregard it.

There is no error.

In this opinion the other judges concurred.