## Davenport et al. v. National Fluorspar Co. et al.

(Decided March 12, 1937.)

CHARLES FERGUSON for appellants.

A. C. MOORE and JOHN A. MOORE for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Crittenden circuit court sitting in equity. On February 11, 1922, appellants, who are the owners of a farm in Crittenden county, executed and delivered a mining lease

to O. E. Guess and C. W. Haynes for a term of 20 years. Thereafter Guess and Haynes assigned the lease to the appellee National Fluorspar Company, which, in January, 1931, commenced taking fluorspar from the property. In 1934 appellee company installed a mill and other equipment for the purpose of milling and washing the product from its mines. At some time during the year 1935 appellees exhausted all of the fluorspar that was then in sight, and it became necessary to drive out new levels from the main shaft of the mine in order to find new deposits of mineral. Appellees were unable to borrow the additional capital necessary to finance this operation, but just at this time they were offered certain contracts for custom milling—that is, milling the products of other mines—which offered a prospect of a sufficient profit to cover the expense of opening the new levels. Appellees accepted these contracts and have from time to time ever since done custom milling for other mines in the neighborhood. This suit was filed by the appellants, the lessors, under the Declaratory Judgment Act (Civ. Code Prac. sec. 639a—1 et seq.), asking for a construction of the lease and that it be adjudged that the appellees have no right to do custom milling on the leased premises or to deposit waste materials or water from the mill on appellants' property.

It is provided by the lease that the lessee has the privilege "to occupy any part of said land, erect buildings, machinery, and has permission to do all kinds of mining work, or prospecting, boring or drilling or any kind of work that may be necessary to develop and operate their works, to have free water, and free right of way with ingress and egress necessary and convenient to operate said mining." By a supplemental contract made in 1934, appellees were granted the exclusive right to use a certain private road or passway through appellants' property "for any purpose whatsoever." The lease provides for the payment to the appellants of $40 per month unless the royalties paid shall amount to more than this sum. A royalty was fixed to be paid on each ton of mineral which it was anticipated that the lessee might discover and mine.

Shortly after the appellees commenced their custom milling, they gave appellants a check for $15 marked "for yard and road rent." Appellants claim that

this check was given simply for additional space which appellees needed for a road. Appellees, on the other hand, contend that it was explained to Mr. Davenport at the time that certain additional yardage was required to take care of the rock and other waste from the custom milling and that, while they were not legally bound to do so, they felt, in justice to appellants, that they should pay something for the additional space thus taken by products from mines other than those on their property. The chancellor was of the opinion that the acceptance of the $15 check by the appellants, under the circumstances detailed by the appellees, estopped them from objecting to the custom milling operations, and did not find it necessary to determine whether or not such operations were permissible under the terms of the lease itself.

In arriving at the intent of the parties when they enter into a contract such as that now before us, and in construing the contract in accordance with the intent, we do no violence to the parol evidence rule when we take into consideration the circumstances attendant upon the location of the right conveyed, the object and purpose for which it was acquired, the particular situation of the parties, the necessities which existed, if any, of having the right claimed by the lessee, and the acts and conduct of the parties in relation thereto. These facts are not competent to vary the written instrument, but to show its true meaning. Blue Grass Coal Corp. v. Combs, 168 Ky. 437, 182 S. W. 207; Stonegap Colliery Co. v. Kelly & Vicars, 115 Va. 390, 79 S. E. 341, 48 L. R. A. (N. S.) 883, and note.

Whether or not the permission to lessee to do "any kind of work that may be necessary to develop and operate their works" can be said to be broad enough to authorize the operation of general custom milling operations on the premises might well be doubted. Evidently the parties themselves were not sure of the proper construction of the words as applied to the situation that was presented. Appellees have been careful to apply all the receipts from these operations to the expenses of further development of appellant's property. They have not undertaken to shift the character of their business from one of mining to one of milling. On the contrary, such custom milling as has been done seems to have been confined to periods when there was no

rock available from apellants' mines. Certainly, under these circumstances, it could hardly be said that the work done was entirely beyond the reasonable scope of the grant evidenced by the words used in the lease, or at least that the balance of doubt was not so nice as to call into operation the rule that we will affirm the judgment of the chancellor where a mere doubt of its correctness remains. Hite's Adm'r v. Hite's Ex'r, 265 Ky. 786, 97 S. W. (2d) 811, and cases there cited.

Aside from the terms of the lease itself, we have the fact that appellants accepted a check "for yard and road rent." The chancellor thought that this could be for nothing except the custom milling operations, and we think the evidence overwhelmingly supports his view. If the lease was sufficiently broad to cover the operation, there was nothing for appellee to buy with the $15 check. On the other hand, as we have seen, the question was doubtful. No reason is apparent why the doubt might not be removed by the payment of an additional consideration therefor. Having accepted the payment, appellant is not now in a position to object to an interpretation of the lease in accordance with his agreement.

Judgment affirmed.