(55 Misc. Rep. 244)

## PANNUTO et al. v. FOGLIA.

(Supreme Court, Appellate Term. June 27, 1907.)

1. LANDLORD AND TENANT—LEASES—CONSTRUCTION—COVENANTS FOR RE-ENTRY.

　　Though the term "re-enter," used in its strict common-law meaning, did not refer to remedies described by existing statutes, a covenant in a lease drawn in a modern form, giving the lessor the right, upon the premises becoming vacant during the term, to "re-enter, either by force or otherwise," and relet the premises as agent of the lessee, holding him liable for the deficiency, included a re-entry by the lessor by summary proceedings, so that, in an action by the lessee to recover money deposited with the lessor for the performance of the lease, the lessor is entitled to the benefit of the

covenant, and may show by way of counterclaim that he re-entered the premises and leased them at a lower rent than that reserved in the lease.

2. SAME—CONSTRUCTION—LANGUAGE—PARTICULAR WORDS.

The use of the word "re-enter" in a modern form of lease does not rebut the presumption that the parties contracted with reference to the existing law, where the contrary intention is not manifest from the contract; and hence the word must have been used in its modern and popular sense.

Appeal from City Court of New York.

Action by Nunzio Pannuto and another against Saverio Foglia to recover money deposited with defendant. From a judgment for plaintiffs, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and PLATZEK, JJ.

Constantine T. Timonier, for appellant.

Jacob H. Corn, for respondents.

SEABURY, J. This action was brought to recover money deposited with the defendant landlord as security for the performance of the terms of the lease, less the rent for October, admittedly due by the plaintiff to the defendant. A warrant in summary proceedings dispossessing the plaintiff from the premises was issued on October 23d. Upon the trial the defendant offered evidence in support of his counterclaim to the effect that after this time the defendant re-entered upon the premises and leased them at a lower rent than that reserved in the lease. Upon the plaintiff's objection the learned trial justice excluded this evidence and directed a verdict for the plaintiff for the full amount of his claim. The legal questions raised by the exception to this ruling are now before this court for review.

The lease provided as follows:

"That if the said premises, or any part thereof, shall·become vacant during the said term, the landlord or his representative may re-enter the same, either by force or otherwise, without being liable to prosecution therefor, and relet the said premises as the agent of the said tenant, and receive the rent thereof, applying the same, first, to the payment of such expenses as he may be put to in re-entering, and then the payment of the rent due by these presents; the balance (if any) to be paid over to the tenants, who shall remain liable for any deficiency."

The exact question presented for determination is whether the language of the lease, drawn in a modern form, giving the landlord the right to "re-enter, either by force or otherwise," contemplated a resumption of possession as a result of summary proceedings. Considered from the same basis as that upon which we would approach the consideration of any other contract, we would experience little difficulty in holding that this language contemplated resumption of possession by summary proceedings. The difficulty arises from the case of Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425, where it was held that:

"When lessors reserve the right 'into and upon the said premises to re-enter, and * * * the same to have again * * * as in their first and former estate,' their words point directly toward re-entry by ejectment, and do not even suggest statutory dispossession."

The learned judge writing for the majority of the court in that case said:

"The use of a purely technical term, especially when it is found in the midst of the quaint words of ancient leases, gives rise to the presumption that the parties used it with a strict common-law meaning. This presumption is strengthened when the technical word occurs in an instrument drawn by one learned in the law, as the lease before us obviously was. 'Re-enter' was coeval with the common law in origin, and it has come down to modern times with its meaning unchanged. Narrow and technical to begin with, it has so continued throughout its history, and is narrow and technical to this day."

It will be observed that in the Michaels Case the presumption that the parties intended to use the word "re-enter" in its ancient and strict sense was held to arise, partly from the fact that it was "found in the midst of the quaint words of ancient leases, and, further, from the fact that this technical word occurred in an instrument drawn by one learned in the law." In the present case the lease is in modern form, and the meaning of the parties is expressed in plain ordinary language, is free from quaint expressions, and, as it expresses the intention of the parties without unnecessary verbiage and repetition, it cannot be said to distinctly carry upon it the "earmarks" of ancient legal learning. The circumstances from which the presumption was held to arise in the Michaels Case do not, therefore, exist in this case. The lease before us is a twentieth century instrument, and the language employed was evidently intended to be used in a modern sense. To disregard this fact, and to hold that the language used is not to be given its natural and ordinary meaning, but that it was used in a Middle Ages sense, would require us to charge the laymen who were parties to this instrument with the black-letter learning of other days, and to violate the real intention of the parties. We do not feel constrained to adopt so unreasonable a construction.

Parties are presumed to contract with reference to the existing law, unless a contrary intention is manifest from the contract which they make. The mere use of the word "re-enter," when it is found in a modern form of lease, does not rebut this presumption. While the word "re-enter" has an ancient and technical meaning, it may also be used in a modern and popular sense. It is difficult to find another word which expresses so accurately the right which the landlord reserves as the word "re-enter." I can see no reason for denying to parties the right to use this word in its modern and popular sense, or, when it is so used, any justification for assuming that it was used in an ancient or technical sense, and not with reference to remedies prescribed by existing statutes. It is to be borne in mind that Michaels v. Fishel is an extreme case, and, as was said by Mr. Justice Hatch, in Baylies v. Ingram, 84 App. Div. 365, 82 N. Y. Supp. 891, in commenting upon it:

"The decision admits that the rule was purely technical, and the ground upon which the decision proceeded was so narrow as to provoke a strong dissent. We should not, therefore, extend the doctrine of that case beyond the covenant there under consideration."

In Baylies v. Ingram the covenant under consideration provided in terms "for a re-entry by any of the forms known to the law," and it

was held that this language included the right of re-entry by summary proceedings. This decision was unanimously affirmed in 181 N. Y. 518, 73 N. E. 1119. We think that this case enunciates the rule that should be applied to the case at bar. The covenant, quoted above, survived the warrant in summary proceedings, and was intended to afford the landlord indemnity for the loss which he sustained as a result of the breach of the terms of the lease by the tenant. It was obviously for this purpose that it was incorporated in the lease, and was intended to cover just such a contingency as that which arose in this case. We think it should be given the effect which the parties intended it to have, and to this end the judgment appealed from should be reversed, and a new trial ordered.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.