EMILY MANSFIELD FERRY ET AL. *vs.* SAMUEL ALDERMAN.

Third Judicial District, New Haven, June Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

The intended meaning of the language used in a written instrument must control in its interpretation and enforcement, if it is susceptible of that meaning.

A lease for five years of rear property on an alleyway which was likely to be built upon by third parties who owned it, provided that if a permanent interruption of the tenant's access by means of the alleyway "shall occur, or having previously occurred, shall continue, after two years from the date hereof," the tenant should nevertheless continue to hire the entire leased premises at a rental of

$1,000 per year. The trial court found that the parties intended to express in the lease an agreement that the concession therein in favor of the tenant, because of the interruption of access, should not continue beyond the first two years of his term, and that for the last three years he should pay the prescribed rent for the entire building. *Held* that the language used was reasonably susceptible of that construction, and therefore the trial court did not err in refusing to reform the lease as prayed for by the defendant, nor in rendering judgment for the full amount of the plaintiff's claim.

Argued June 6th—decided July 23d, 1918.

ACTION to recover rent, brought to and tried by the City Court of New Haven, *Hoyt, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant. *No error.*

August 20th, 1915, the plaintiffs were the owners of property in New Haven upon which stood two buildings. One was a large block fronting on Chapel Street, and the other a small one-story structure in the rear of the block. Access to the latter building could be had only by means of an alleyway extending therefrom to the street, or through the front block. The plaintiffs were neither owners of the alleyway nor had they any other interest therein than the right to use it until it should be built upon. On that day they, as a result of prior negotiations, executed a lease in writing of the rear building to the defendant. The term ended August 31st, 1920, and the stipulated rent was an annual one of $1,200 plus a sum equal to ten per cent per annum on any excess over $900 which the stipulated alterations should cost. This rent was payable in monthly instalments in advance. By the terms of the lease the plaintiffs agreed to make sundry improvements and to increase the height of the structure by the addition of a second story, and gave to the defendant the privilege of using the alleyway so long as it remained unobstructed by the erection of a building thereon. The defendant thereupon went into occupation, using the lower floor

as a garage and the upper, when completed, as a workshop in connection with his tailoring business.

To the lease was attached a rider containing further stipulations concerning the payment of rent, which has been the occasion of the present controversy. Those stipulations are as follows: "In the event that the tenant's access to the said rear building shall be permanently interrupted by the construction of a building in and upon said Leavenworth Alley or otherwise, then the tenant at his option may thereupon give up possession of the first or ground floor of the said rear building, and in that event, during the period of this lease, shall continue to rent and hire the second story of the said building at a rental of thirty-five dollars ($35) per month, or at his option the tenant may continue to occupy the entire rear building at a rental of eighty-three dollars and thirty-three cents ($83.33) per month, but if the said interruption shall occur, or having previously occurred shall continue, after two years from the date hereof, the tenant will nevertheless continue to hire the said entire rear building at a rental of $1,000 per year. In that event, permission is hereby given to sublease a portion thereof to a tenant whose business shall not be objectionable or prejudicial to other tenants of the building No. 962 Chapel Street, and who shall be reasonably satisfactory to the landlords, provided that his occupancy of the premises for the purpose for which they may be used by him shall not increase the rate of insurance on the said rear building or the front building No. 962 Chapel Street, or their contents."

During December, 1915, the owners of the alleyway began the erection of a building covering it. Thereupon the plaintiffs, through their attorneys, wrote the defendant, calling his attention to that fact and asking him to notify the plaintiffs' agent in charge of the

property whether he desired to exercise the option and to continue to occupy the entire building. The defendant, on the same day, wrote the agent, saying that he did not care to occupy the ground floor any longer, but would continue to rent the upper floor as theretofore. The ground floor was already vacated and has not since been used by the defendant. He has continued his use of the upper floor to the present time.

August 1st, 1917, the plaintiffs sent the defendant a bill for the current month's rent made out at the rate of $35 from the first to the twentieth of the month and of $83.33 for the remainder of the month. The defendant's refusal to pay at a higher rate than $35 per month resulted in the bringing of this action which was forthwith commenced.

The defendant answered, setting up the terms of the lease and the fact of his election thereunder in bar of a recovery in excess of $35, and asked by way of counter-claim that the lease be reformed by the striking out of the paragraph quoted of the words "or having previously occurred shall continue," so that it should conform to what was alleged to be the understanding and intention of the parties. In support of the prayer for reformation, the counterclaim alleges that at the time the lease was drawn it was distinctly understood and agreed between the parties that in the event that the alleyway should be permanently built upon the defendant should have the option to surrender the first floor of the building, with the qualification, however, that if the obstruction by the erection of a building should not occur for a period of two years after the signing of the lease, then the defendant was to continue to hire the whole building at a rental of $1,000 per year. The court has found that this was not the understanding and agreement of the parties. On the

Ferry *v.* Alderman.

contrary, its finding is that their understanding and agreement, reached after a full discussion of the situation which the location of the building and the proposed enlargement and improvement of the property presented, and the one which the parties intended that the lease should express, was that if the interruption of the use of the alleyway should occur within the first two years of the lease, the lessee should have the right to give up the lower floor during the balance of the first two years only, and that the defendant was to pay for the entire building during the last three years of the lease in any event.

*Walter J. Walsh,* for the appellant (defendant).

*Harrison T. Sheldon,* for the appellees (plaintiffs).

PER CURIAM. The court's finding as to the understanding and agreement of the parties intended by them to be expressed in the lease which they executed, is decisive of the correctness of the action of the court in the rendition of its judgment. The intended meaning of the language used in the lease must control in its interpretation and enforcement, if it is susceptible of that meaning. Upon the latter point there certainly can be no reasonable question. The court, therefore, did not err either in refusing to reform the lease as requested, or in rendering judgment for the plaintiffs for the full amount of their claim.

There is no error.