FLORENCE GATES JUDD *vs.* MUTUAL BANK AND TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 8th—decided March 22d, 1932.

*Josiah H. Peck,* with whom, on the brief, was *Louis M. Schatz,* for the appellant (defendant).

*Harry L. Nair,* with whom was *Bernard C. Kamerman,* and, on the brief, *Solomon Elsner,* for the appellee (plaintiff).

HINMAN, J. Under the first count of her complaint, the plaintiff sought to recover, under a lease made between the plaintiff and the defendant on June 18th, 1925, an instalment of rent for the monthly period beginning December 15th, 1930. After a demurrer to the original answer to this count had been sustained, *Jennings, J.,* the defendant filed an amended answer admitting the lease but alleging that prior to the execution thereof the defendant owned and occupied its own banking quarters, but by reason of its poor financial condition was forced to sell its building and seek quarters elsewhere; that notwithstanding the sale, the defendant's financial condition remained the same and its ability to continue to function successfully was uncertain, and that these facts were known to the plaintiff and her agents and the defendant when the lease was executed. Also, that the lease contained the following provision: "This lease is made further upon the express condition that in the event of any assignment for the benefit of creditors of the party of the second part for voluntary or involuntary liquidation, that forthwith and immediately this lease shall expire and terminate and the party of the first part be entitled to immediate possession and occupancy of the within premises"; and that the parties intended that upon the execution of such an assignment, the lease should be automatically terminated. On or about November 6th, 1930, the defendant made an assignment for the benefit of creditors for voluntary liquidation and on or about November 9th vacated the premises. The plaintiff demurred to these allegations upon the grounds, in substance, that the provision of the lease quoted in the amended answer gives to the lessor a right of re-entry and a power to terminate the lease upon a condition subsequent, to be exercised at her option, but it does not appear that the

plaintiff has made any entry or otherwise exercised her option to terminate the lease which would relieve the defendant from any duty to pay the rental sued for; also, that the intent of the parties alleged is not expressed by the written lease. The demurrer was sustained upon these grounds. Further grounds to the effect that the assignment alleged to have been made was not within the meaning of the condition expressed in the lease were overruled. This appeal relates only to the ruling sustaining the demurrer.

It appears from the memorandum of decision that this ruling was based upon a holding that as the language of the clause of the lease relied upon by the defendant states that the lease is made upon the "express condition" set forth in that paragraph, no other meaning or effect can be given to the provision than that technically attaching to a "condition" as applied to estates in land, viz: that, although the duration of the estate is subject to a contingent event, the mere happening of the event does not end the estate, but some affirmative action on the part of the lessor is necessary in order to work a termination—as distinguished from provisions in the nature of special limitation, by virtue of which the estate terminates upon the happening of the specified contingency without any action by either party. 2 Tiffany, Landlord & Tenant, § 194, p. 1368.

It has been held that where a purely technical term is found in the midst of the language of ancient leases a presumption arises that the parties used it in its strict common-law meaning. *Michaels* v. *Fishel,* 169 N. Y. 381, 62 N. E. 425, 427. It is also doubtless true that when such a term is used in a formal clause which by common usage and recognition has been accepted as having a meaning and effect consistent with the significance of the technical term, or where there is

nothing to indicate or suggest that such a term is used in other than the narrow and technical meaning which it has acquired at common law, it is to be presumed to have been used with that meaning. Otherwise, the construction to be placed upon the provision remains a question of the intention of the parties, to be deduced from the whole instrument, and the context may qualify the meaning of the technical term so as to cause it to conform to the intention of the parties. 2 Tiffany, Landlord & Tenant, § 194, p. 1368; 1 Tiffany, Real Property, § 68; 35 C. J. 1179. What is sought is the understanding and agreement which the parties intended to express and, unless that is so stated as to leave no reasonable room for question, the intention is to be sought and determined in the light of all the surrounding and significant circumstances. *Miller* v. *Mutual Mortgage Co.,* 112 Conn. 303, 305, 152 Atl. 154; *Ferry* v. *Alderman,* 93 Conn. 29, 33, 104 Atl. 68; *Johnson* v. *Phœnix Mutual Life Ins. Co.,* 46 Conn. 92, 101; 35 C. J. 1180.

It is common knowledge that in drafting instruments it frequently occurs that language is employed in its modern and popular sense, without special regard to the strict and narrow technical significance which it may have acquired in the past or which may now attach to it when deliberately and understandingly used in that sense. In such instances, as stated in *Pannuto* v. *Foglia,* 105 N. Y. Supp. 495, 497, the expression "cannot be said to . . . carry upon it the 'earmarks' of ancient legal learning. . . . The lease before us is a twentieth century instrument, and the language employed was evidently intended to be used in the modern sense. To disregard this fact, and to hold that the language used is not to be given its natural and ordinary meaning, but that it was used in a Middle Ages sense, would require us to charge the lay-

men who were parties to this instrument with the black-letter learning of other days, and to violate the real intention of the parties."

The general clause in the present lease concerning default in payment of rent or in any of the covenants of the lease provides that "it shall be lawful for the [lessor] at any time after such neglect or default . . . to re-enter and take possession of said leased premises, and such re-entry and taking possession shall end and terminate this lease." On the other hand, the provision of the clause specially under examination is that in the event specified "forthwith and immediately this lease shall expire and terminate and the [lessor] be entitled to immediate possession and occupancy." The cases cited by the plaintiff in support of the contention that termination of the lease does not occur until the lessor exercises an election to that effect are for the most part distinguishable upon their facts in that the clause therein relied on provided, directly or by reference, for re-entry. *Bowman* v. *Foot,* 29 Conn. 331, 338; *Segall* v. *Gagliardi,* 103 Conn. 497, 499, 130 Atl. 896; *Shannon* v. *Jacobson,* 262 Mass. 463, 160 N. E. 245, 247; *In re Celian,* 41 Fed. (2d) 560; *Petition of Colburn,* 16 Fed. (2d) 780. In others the clause provided for a forfeiture, implying an election by the party entitled to enforce it by reclaiming the estate. *Warner* v. *Bennett,* 31 Conn. 468, 476; *Schneider* v. *Springmann,* 25 Fed. (2d) 255.

It is contended by the defendant, further, that the general default clause affords ample protection to the lessor against failure to pay rent or other ordinary results of insolvency of the lessee, while an obvious reason, on behalf of the lessee, for providing for automatic termination is that the stipulated occurrence would bring to an end the specific purpose for which the premises were leased—"conducting a banking

business," and liability thereafter under the lease would be a profitless burden upon the assignee and creditors. If the parties contemplated the happening of that contingency, they could, and probably would, agree upon its consequences. *Goldberg* v. *Callender Brothers, Inc.,* 96 Conn. 182, 189, 113 Atl. 170; *Bailey* v. *Gipstein,* 110 Conn. 680, 684, 149 Atl. 137.

The allegations in the amended answer as to the financial condition of the lessee bank at the time the lease was made, uncertainty as to its future successful operation, and the knowledge of the plaintiff as to these conditions, are to be tested, on demurrer, by the facts which are provable thereunder (*Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 649, 139 Atl. 106) and we cannot say at the present stage that such facts might not have a proper function and serve a legitimate purpose toward ascertaining the intention of the parties. If, ultimately, it does not appear that the intention expressed by the lease is other than in accord with the technical meaning of a condition subsequent, or if such presumption as arises from the use of the term is not effectively overcome and rebutted by other legitimate and admissible considerations, that meaning is to be given effect, but the mere use of the technical term ought not and does not necessarily foreclose resort to other accepted means of ascertainment of the actual intention sought to be expressed, through consideration of the other provisions of the instrument and the relevant circumstances of the parties.

The court was in error in holding that the use of the word "condition" removes all possible ambiguity, conclusively establishes an intention to attach all the incidents of a technical condition subsequent, including an option in the lessor, by refraining from re-entry or other decisive action, to prevent the termination of the lease, and excludes all other considerations which

otherwise might be admissible as aiding in ascertainment of the intention of the parties. Inquiry embracing such aids may lead to the same result—a construction of the clause as creating a condition for the sole benefit of the lessor and to be given effect at her option only, but upon this record the defendant is entitled to an opportunity to demonstrate, if it can, consistently with the rules governing such inquiry, that the clause may and should be construed as expressing intention that the lease be terminated by the occurrence of the stipulated event, without entry or other action by the plaintiff lessor.

There is error and the case is remanded to the Superior Court with direction to overrule the demurrer, and the case to be proceeded with according to law.

In this opinion the other judges concurred.