FLORENCE GATES JUDD *vs.* MUTUAL BANK AND TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued December 8th, 1932—decided January 31st, 1933.

*Josiah H. Peck,* for the appellant (defendant).

*Harry L. Nair,* with whom, on the brief, was *Solomon Elsner,* for the appellee (plaintiff).

HINMAN, J.   The lease, in addition to the customary general clause providing for re-entry and termination

by the lessor in case of default in payment of rent or any of the covenants, contained the following provision: "This lease is made further upon the express condition that in the event of any assignment for the benefit of the creditors of the party of the second part for voluntary or involuntary liquidation, that forthwith and immediately this lease shall expire and terminate and the party of the first part be entitled to immediate possession and occupancy of the within premises." The principal issue raised by the pleadings was whether this clause constituted a "condition" in the usual and technical sense as applied to estates in land, so that the mere happening of the contingent event provided for did not terminate the lease except at the option of the lessor manifested by some affirmative action, or was a limitation under which the lease ended upon occurrence of the contingency without any action by either party. On the former appeal, which was from a ruling on demurrer addressed to this question (114 Conn. 553, 159 Atl. 487), we held (p. 559) that the use of the word "condition" in this clause did not, of itself, conclusively establish an intention to attach thereto all the incidents of a technical condition subsequent, but that other considerations, including the provisions of the entire lease and relevant circumstances of the parties, might be resorted to for the ascertainment of the intention with which the term was employed.

On the susbequent trial on the merits, the defendant sought to establish an intention by the parties that an assignment for the benefit of creditors should automatically terminate the lease, by proof of allegations in its answer that prior to the execution of the lease the defendant owned and occupied its own banking quarters, but by reason of its poor financial condition was forced to sell its building and seek quarters else-

where; that notwithstanding the sale the defendant's financial condition remained the same and its ability to continue to function successfully was uncertain; and that these facts were known to the plaintiff and her agents and the defendant when the lease was executed. As to the issues raised by the plaintiff's denial of these allegations the trial court found as follows: As of January 1st, 1925, the capital of the defendant bank was $300,000 and it had a surplus of $60,000 and undivided profits of $14,227.76. During 1924 and 1925 it did not pay any dividends on its capital stock. For some time prior to 1925 it owned and occupied its own banking house, which was carried on its books at a valuation of $292,902.54, but early in 1925 sold it at a profit of about $58,000. At about the time of the sale the defendant entered into negotiations for the purpose of leasing banking quarters in the plaintiff's building. The plaintiff personally took no part in the negotiations and was represented by the firm of Skinner Brothers, real-estate brokers, the transaction being handled by William C. Skinner, one of the partners. The principal agent of the plaintiff in the general management of the building was W. T. Sloper, who was a stockbroker doing business in Hartford but during the negotiations was out of the country. On April 3d, 1925, Skinner Brothers offered to lease the premises to the defendant at a rental of $7500 a year for the first five years and $10,000 a year for the second five years, the entire term to be ten years. On April 9th the defendant accepted the proposed terms with the request that the following modifications be submitted to Mr. Sloper upon his return to the country: That the lease should contain a provision that the lessee have the right to sublet the premises and should provide that the second term of five years be at the option of the lessee. The modifications requested by the de-

fendant were refused, and on June 18th, 1925, the lease was executed. During the period of the negotiations and at the time of the execution of the lease, the plaintiff and her agents and representatives knew nothing of any alleged weakened condition of the bank or any alleged uncertainty of its continued existence.

From the facts found conclusions were reached that the defendant had failed to prove that the plaintiff or her agents knew of the alleged weakened condition of the bank and uncertainty of its continuance, or to establish other considerations sufficient to rebut the presumption arising from the use of the term "condition" that the meaning and effect intended was that technically attaching to a condition subsequent; also that the other provisions of the lease do not establish an intention by the parties that the clause should be construed as a limitation. Consequently it was held that "the provision in the lease relating to an assignment for the benefit of creditors is a condition, to be exercised at the plaintiff's option, and not a limitation automatically terminating the lease or relieving the defendant from any duty to pay the rental reserved."

The assignments on this appeal pertain to the finding and conclusions. As to the requested additions to the finding, the claimed facts that the defendant sold its banking house because of poor financial condition, and that no other lease of space in the plaintiff's building contained a provision regarding the effect of an assignment for benefit of creditors, even if admitted or undisputed, would not be controlling or materially important to the conclusion as to knowledge of the plaintiff of defendant's financial condition, or to the intent of the clause in question. As no compelling inference of knowledge of the defendant's alleged financial frailty attributable to the plaintiff arises from the fact that Sloper was a stockbroker doing

business in Hartford, the questioned finding that he was out of the country during the negotiations for the lease is, at most, indecisive. The conclusion of lack of knowledge by the plaintiff of the defendant's condition must stand, and the facts as to the existence of such a condition are not available in support of the defendant's claim as to the intent and effect of the provision under examination. The circumstances to be considered in construing the lease are limited to those known to the parties when it was made. *Needy* v. *Middlekauff*, 102 Md. 181, 62 Atl. 159; *Paust* v. *Georgian*, 147 Minn. 149, 179 N. W. 735; 35 Corpus Juris, p. 1180.

The defendant also asserts that the clause, without regard to circumstances extraneous of the provisions of the lease itself, should be construed as a limitation. Reliance is placed principally upon the fact that express provision for entry by the lessor is included in the clause pertaining to defaults in general but not in that now in question. We indicated on the former appeal (p. 558) that this did not suffice to constitute the latter a limitation, without the aid of other indicia that it was so intended by the parties, but that the use of the term "condition" was sufficient to attach to it the technical significance of a condition subsequent unless the presumption arising therefrom was "effectively overcome and rebutted by other legitimate and admissible considerations" indicating an intention that its effect should be, instead, that of a conditional limitation. The only other feature of the lease itself for which significance to this end is claimed is the specification that the leased premises are "to be used . . . for the purpose of conducting a banking business therein." We find nothing to indicate that this is entitled to significance other than the designation as to purpose of use which is customary in leases, espe-

cially in view of the further and usual provision, immediately following, for use of the premises for other purposes with the consent of the lessor. We are unable, therefore, to find error in the conclusion of the trial court that an intention that the clause relating to an assignment for benefit of creditors should constitute a limitation, instead of a condition, is not established by other provisions of the lease. It does not appear that the plaintiff has exercised the option, incident to a condition, to work a termination of the lease.

In this situation it is immaterial whether the contract of the defendant with the City Bank & Trust Company constituted an "assignment for the benefit of creditors for voluntary or involuntary liquidation" within the meaning of the lease or was, as the trial court regarded it, "in substance a sale." This would become important only if the lease were so construed as to work a termination, by conditional limitation, if and when such an assignment occurred.

There is no error.

In this opinion the other judges concurred.