THE BRIDGE-MILE SHOE CORPORATION *v.* LIGGETT DRUG COMPANY, INC.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 12—decided May 3, 1955

*Arthur C. Williams,* with whom, on the brief, was *Daniel F. Wheeler,* for the appellant (plaintiff).

*C. Driscoll Grimes,* for the appellee (defendant).

WYNNE, J. In this action the plaintiff seeks to recover damages for the expense of extensive alterations made to a building sublet to it by the defendant,

and for loss of business incident to the alterations. The trial court rendered judgment for the defendant, and from that judgment this appeal has been taken.

The court's finding has been attacked in numerous particulars. The facts which are not in dispute are as follows: On July 25, 1950, the parties entered into a written indenture of lease by which the defendant sublet to the plaintiff, for a term beginning September 15, 1950, and ending December 30, 1968, certain real property situated at the corner of Main Street and Fairfield Avenue in Bridgeport. One paragraph of this indenture provided as follows: "If, at the date fixed for the commencement of the term hereof, there be any violations of any orders, ordinances, or regulations of any state, county or municipal government, or any department thereof, affecting the demised premises, and the cost of removal or compliance therewith shall be more than One Thousand Dollars ($1,000), Landlord agrees, at its sole expense to remove and/or comply therewith and Tenant grants Landlord the right to enter the demised premises for such purpose, provided Landlord shall promptly commence the work required therefor and diligently prosecute same to completion."

At the time of the execution of the indenture the defendant was in possession of the premises under a lease which permitted the subleasing of the premises, and no question is raised that the sublease established the legal relationship from which the rights of the present parties can be determined. The plaintiff is a wholly owned subsidiary of the Miles Shoe Company, which owned or operated 145 retail shoe stores. For several years prior to 1950, this company had operated a retail shoe store in Bridgeport

about two blocks from the drugstore operated by the defendant in the premises which are subject to the sublease here involved. The Miles Shoe Company was interested in a new location for its Bridgeport store and was engaged in inquiries with such an end in view. The defendant had, since 1933, conducted a retail drugstore on the first floor of the building which this action concerns and had, since January 1, 1948, been in possession of the entire premises under a long-term lease. Commencing with the year 1947, the defendant's drugstore had been operated at a constant loss. In the early part of 1950 the defendant explored the possibility of making certain alterations in the building, including enlarging its drugstore on the first floor. Plans were submitted by the defendant to the building department of the city of Bridgeport, and the defendant was advised that the suggested changes would not be permitted unless other changes were made to comply with the Bridgeport building code. The building was approximately one hundred years old. The building code was enacted long after the erection of the building. While the code specifies in detail the requirements for new buildings, it does not require any changes or alterations in existing buildings. It contains provisions empowering the authorities to require certain work to be done in existing buildings to make them safe, but these provisions include notice to owners or occupants. No claim is made that such a notice had been given to the defendant prior to the execution of the indenture here in question.

The parties are in substantial accord as to the principal issues involved in this appeal. These are twofold: (1) whether the court erred in construing the term "violations" as used in the quoted paragraph of the indenture as referring only to "viola-

tions" which in fact existed at the commencement of the term and of which the defendant had knowledge; and (2) whether the court erred in concluding that the circumstances existing during the negotiations for the sublease did not impose a duty upon the defendant to disclose material facts which it must have known would have a direct bearing on the plaintiff's intentions regarding building alterations. The assignment of errors as filed and argued comprehends these two questions and also presents an extensive attack on the finding. The answer to the definite issues presented is determinative of the appeal. The finding is not subject to correction. Some of the paragraphs of the draft finding which the defendant seeks to have added depend upon the acceptance by the court of the testimony of witnesses which the court had the power to reject. *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 730, 97 A.2d 562. Others are neither admitted nor undisputed facts. Practice Book § 397; Maltbie, Conn. App. Proc., p. 124. Still others, if added, would avail the plaintiff nothing. The facts found by the court of which the plaintiff complains are supported by the evidence, and the conclusions drawn therefrom are proper.

In the negotiations leading up to the execution of the indenture, both parties were represented by attorneys and experienced advisers. It is the plaintiff's claim that the indenture itself imposed upon the defendant the duty of paying costs of compliance with the building code if in excess of $1000 and that the defendant was under a duty to disclose all the facts it knew or had learned as to what the plaintiff would face under the building code if alterations were undertaken. As expressed by the plaintiff in its brief, the defendant extricated itself from a pre-

carious position at the expense of the plaintiff and unloaded a long-term lease involving almost a million-dollar obligation over the term at no loss to itself.

To this claim the defendant says that there is no ambiguity in the language of the indenture and that it must be so construed, in the light of all the circumstances and conditions with which each party was thoroughly familiar; and as to the matter of fraud, it says that the only knowledge claimed to have been withheld by it concerned applicable provisions of the building code which the court found were as available to the plaintiff as to the defendant. On this latter point, the defendant maintains that it would be unreasonable to assume that the plaintiff made no investigation of the requirements it might run into and that there is no reason to hold that the defendant's failure to disclose to the plaintiff the knowledge of the building code it may have acquired months before in connection with possible remodeling and modernizing of the building amounted to fraudulent concealment of material facts.

With regard to the claim that the parties had different understandings as to what was meant by the language in the quoted paragraph of the indenture, it seems clear that the plaintiff could not have had the impression that the term "violations" had even a remote relation to technical requirements of a modern building code incident to the remodeling of an old structure. A contract is to be construed according to what is fairly to be assumed to be the understanding and intent of the parties. *Bronx Derrick & Tool Co.* v. *Porcupine Co.,* 117 Conn. 314, 318, 167 A. 829; *Ferry* v. *Alderman,* 93 Conn. 29, 33, 104 A. 68. As to the language used, there is compelling force in the fact that it was the plaintiff's own

attorney who actually drafted the paragraph in question. It would be straining at credulity to assume that the attorney had any illusions as to the practical aspects of the important negotiations being carried on between the two mercantile corporations. The circumstances to be considered are limited to those known to the parties when the lease was made. *Judd* v. *Mutual Bank & Trust Co.,* 116 Conn. 167, 171, 164 A. 204.

As to the claimed right to relief on the ground of actionable nondisclosure by the defendant, the principles of law applicable are well stated in the Restatement, Restitution § 8. To be actionable for fraud, the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into, or refrain from entering into, a transaction. Relative to the application of this principle in a case involving alleged fraudulent silence of a defendant, it is the general rule that the silence of a vendor with reference to facts affecting the value or desirability of property sold cannot give rise to an action by the vendee to set aside the transaction as fraudulent. Certainly this is true as to all facts which are open to discovery upon reasonable inquiry by the vendee. *Haddad* v. *Clark,* 132 Conn. 229, 233, 43 A.2d 221; *Gayne* v. *Smith,* 104 Conn. 650, 652, 134 A. 62.

The question decisive of the plaintiff's appeal as to this aspect of the case is whether the circumstances were such that the defendant's silence must be held to have produced a false impression on the plaintiff. We cannot say that the court's conclusion as to this did violence to established principles.

There is no error.

In this opinion the other judges concurred.