ATWOOD COLLINS II *v.* SEARS, ROEBUCK AND COMPANY

COTTER, SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued January 3—decided February 21, 1973

*R. Graeme Smith,* with whom, on the brief, was *Louis R. Pepe,* for the appellant (defendant).

*Ralph C. Dixon,* with whom, on the brief, was *Thomas J. Groark, Jr.,* for the appellee (plaintiff).

COTTER, J. The plaintiff, Atwood Collins II, doing business as the River Valley Development Company in Middletown, the defendant's lessor, sought in the first and third counts of his complaint to recover additional annual rent claimed to be due pursuant to a lease provision providing for the payment of additional rent on the institution of foreclosure proceedings against the leased premises by a mortgagee and to recover rent from the defendant for the privilege of customer parking.

The defendant, Sears, Roebuck and Company, in its answer, special defenses to counts 1 and 3, which are the only counts left in the present appeal, and

counterclaim, denied that the plaintiff was entitled to damages. In the special defenses, pertinent to this appeal, the defendant alleged, inter alia, that the paragraph of the lease obligating the tenant to pay an additional rental sum in the event of the institution of a foreclosure proceeding was void for ambiguity and vagueness because no provision was made for the termination of payment of additional rent when foreclosure proceedings are withdrawn; that such paragraph is void as against public policy because it would permit the landlord and his mortgagee to act collusively to triple the tenant's basic rent for an indefinite period by the mere initiation of, and subsequent withdrawal of, or failure to proceed with, foreclosure proceedings; and finally, the defendant alleged that the plaintiff had failed as a result of the policy followed by the owner and operator of the parking arcade to provide a parking area for 600 cars for the defendant's customers, thereby causing damage to the defendant's business and to its reputation. By way of counterclaim, the defendant sought restitution of all additional rent paid pursuant to the foreclosure provision of the lease, rescission of the lease and damages. Judgment was rendered for the plaintiff on the first and third counts of the complaint, in favor of the defendant on the second and fourth counts of the complaint, and for the plaintiff on the counterclaim. The defendant has appealed.

On August 1, 1963, the River Valley Development Company, a forerunner of the plaintiff, leased certain premises in Middletown to the defendant. The lease, which included a rider, was negotiated with the defendant, Sears, Roebuck and Company, through its real estate department and its legal counsel; and the lease as finally executed was pre-

pared by the defendant's legal counsel after negotiations which commenced with the defendant submitting its standard lease form to the lessor. By stipulation entered into between the parties, it was agreed that the assets of the original lessor, including the lease, were transferred to the plaintiff on June 15, 1969, and that the gross floor area leased by the defendant in the Riverview Shopping Center was 86,647 square feet. The defendant took occupancy of the demised premises on April 19, 1965.

I

(a)

The pertinent portion of paragraph 15 of the lease, which gave rise to the dispute concerning payment of an additional rental sum in the event of the institution of a foreclosure proceeding, is set forth in the footnote.[1]

On May 21, 1968, a foreclosure suit was instituted against the lessor by the Hartford National Bank and Trust Company, mortgagee of the demised premises. The defendant, on demand of the plaintiff, made the payments provided for in paragraph 15 of the lease from the date the foreclosure action was instituted until November 17, 1970. On March 24, 1969, the mortgage held by the Hartford National Bank, which was the subject of the foreclo-

---

[1] "15 . . . Despite any provisions of this lease to the contrary, in the event of the institution of a foreclosure proceeding by the Landlord's present or future mortgagee against the premises of which the leased premises are a part, Tenant shall be obligated to pay to Landlord, in addition to the rent payable hereunder, an annual sum of Fifteen Thousand Nine Hundred Sixty-Nine Dollars and Twenty Cents ($15,969.20). This payment shall be pro-rated in any lease year if said foreclosure proceeding is actually instituted at sometime within a year."

sure suit, was released and on the same date the plaintiff granted and made a new mortgage to the Hartford National Bank. On December 5, 1969, the plaintiff informed the defendant that the mortgage on which the foreclosure suit was based had been released on March 24, 1969. No other foreclosure proceeding had been instituted from March 24, 1969, through the dates of trial and on March 31, 1971, the foreclosure suit in question was withdrawn.

The court concluded that the language of paragraph 15 of the lease was clear and definite; that it plainly stated that in the event of the institution of a foreclosure action, the defendant was obligated to pay the additional rent provided for by paragraph 15 during the term of the lease, irrespective of the state of the foreclosure action which initiated the additional rent; and that it was not against public policy. We agree with the court's conclusions.

We have stated that in construing a written lease, which constitutes a written contract, the intention of the parties, which must be gathered from the language of the instrument in light of the circumstances existing at the time of its execution, is controlling, the ordinary meaning of language must be followed unless a technical or special meaning is clearly intended, and an unexpressed intent is of no legal significance. *Perruccio* v. *Allen,* 156 Conn. 282, 285, 240 A.2d 912; 51C C.J.S., Landlord and Tenant, § 202 (2) ; 49 Am. Jur. 2d, Landlord and Tenant, § 141; 17 Am. Jur. 2d, Contracts, § 241. When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain

and unambiguous, and it is to be given effect according to its language. *Brownell* v. *Burlington Federal Savings & Loan Assn.*, 115 Vt. 455, 458, 63 A.2d 862. It is the claim of the defendant that a provision should have been included in the lease to terminate the payment of additional rent on the withdrawal of the foreclosure action and that the omission of such a clause creates an ambiguity which must be resolved by interpretation in favor of the defendant. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494, 152 A.2d 316.

The interpretation of a contract must be made in accordance with the terms employed in the instrument and a court cannot by that means disregard the words used by the parties or revise, add to, or create a new agreement. Although the defendant would like to add a contigency to the lease which would provide for termination of the defendant's liability for the payment of additional rent in the event of a subsequent withdrawal of the action, we cannot so interpret or construe the lease. Where a certain contingency is provided for in a contract, the court cannot import into the contract some other and different provision for the same contingency, nor can the construction of an agreement, because of the unreasonableness of its terms, be changed to vary the express limitation of its terms. *Whitaker* v. *Cannon Mills Co.*, 132 Conn. 434, 440, 45 A.2d 120. "We assume no right to add a new term to a contract, though it were clear that had the attention of the parties been called to it in all probability it

would have been inserted." *Williams* v. *Lilley,* 67 Conn. 50, 59, 34 A. 765. Whether provident or improvident, an agreement moved on calculated considerations is entitled to the sanction of the law; *United States* v. *United Shoe Machinery Co.,* 247 U.S. 32, 66, 38 S. Ct. 473, 62 L. Ed. 968; and even though a party might prefer to have the court decide the plain effect of his contract contrary to the expressed intention set forth in the agreement, it is not within the power of the court to make a new or different agreement. *Osborne* v. *Locke Steel Chain Co.,* 153 Conn. 527, 531–32, 218 A.2d 526; 17 Am. Jur. 2d 627, Contracts, § 242; 4 Williston, Contracts (3d Ed.) § 610.

The defendant does not argue that the so-called contingency was left out of the lease in error or by mistake, but that, on the contrary, failure to include another contingency created an ambiguity. It is significant, however, that the defendant does not dispute or attack the findings that: The lease was negotiated through the real estate department of the defendant Sears, Roebuck and Company and its legal counsel; the negotiations for the lease commenced with the defendant submitting its standard lease form to the plaintiff; the lease which was finally executed was prepared by the defendant's legal counsel; and the defendant stated the purpose of paragraph 15 was to aid the plaintiff in obtaining a larger mortgage because the value of the lease would be computed on the basis of the additional rent provided for in paragraph 15 rather than on the ordinary rent. The finding of the court that "the final lease included modifications to the defendant's standard lease, one of which was paragraph 15 which was inserted at the direction of the defendant" is supported by the evidence printed in the

plaintiff's brief and must stand. "As to the language used, there is compelling force in the fact that it was the . . . [defendant's] own attorney who actually drafted the paragraph in question. It would be straining at credulity to assume that the attorney had any illusions as to the practical aspects of the important negotiations being carried on" by the parties, one of whom, the defendant Sears, Roebuck and Company, was a large mercantile corporation. *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.*, 142 Conn. 313, 318–19, 113 A.2d 863; see 4 Tiffany, Law of Real Property (3d Ed.) § 978 (1972 Cum. Sup.). Language supplied by the defendant must be construed most strongly against it. *Beach* v. *Beach*, 141 Conn. 583, 593, 107 A.2d 629.

### (b)

We do not agree with the contention urged on us by the defendant that the rent escalation provision of paragraph 15 of the lease is void as against public policy. The defendant argues that to uphold the validity of this clause "would allow a landlord and his mortgagee to collusively institute a foreclosure proceeding merely to trigger the additional rent provision, permit the suit to remain dormant or withdraw it altogether, and collect the additional rent until the end of the lease term." The defendant, however, agrees that it does not make such a charge in the present case but argues that it could take place in another instance. Ordinarily, the parties to a lease may incorporate by mutual agreement a special provision fairly obtained, which expressly changes the obligations or responsibilities in the agreement and such a provision will not be held contrary to public policy. *Samelson* v. *Harper's Furs, Inc.*, 144 Conn. 368, 373, 131 A.2d 827. The

principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the "general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Twin City Pipe Line Co.* v. *Harding Glass Co.,* 283 U.S. 353, 356, 357, 51 S. Ct. 476, 75 L. Ed. 1112; 17 Am. Jur. 2d, Contracts, § 174. The impropriety injurious to the interests of society which will relieve a party from the obligation he has assumed must be clear and certain before the contract will be found void and unenforceable. *Thacher Hotel, Inc.* v. *Economos,* 160 Me. 22, 26, 197 A.2d 59; 5 Williston, Contracts § 1629A (Rev. Ed.); 17 Am. Jur. 2d, Contracts, § 178. An unfounded anticipation that a provision in a lease may lead to fraudulent conduct by one of the parties, which might happen in any contract case, is an insufficient basis on which to ground a conclusion that an agreement is contrary to public policy. The defendant has failed to show that the lease in question tends to impose any wrong, disadvantage or injury on the public or that it is prejudicial to the public good or in violation of established public policy.

## II

The defendant assigns error in the trial court's conclusion that the plaintiff has maintained a parking facility in accordance with the terms of the lease and claims that the plaintiff failed to provide facilities for parking pursuant to paragraphs 48 and 59 of the lease, contending that such failure is a material breach of the lease which, therefore, warrants rescission. In addition, the defendant claims

that the elimination of 103 to 350 of the 600 parking spaces constitutes a partial eviction of the defendant and extinguishes its liability for parking rent. Pertinent portions of paragraphs 48 and 59 of the lease which are relevant to these claims are printed in footnotes 2 and 3.

The defendant Sears, Roebuck and Company was only one of the tenants in the Riverview Shopping

[2] "48. Landlord guarantees to Tenant for the term of this lease and any extension thereof for the benefit of Tenant and Tenant's employees, agents, customers and invitees, the right, in common with the other tenants of such shopping center and their employees, agents, customers and invitees to use for parking the entire area of Parcel D, excluding only such portions of the shopping center as may be necessary for entrances, exits, driveways, walkways, loading and unloading areas. Before the commencement of the term of this lease, Landlord shall cause to be graded, drained, lighted and surfaced the parking area, as herein defined. During the term of this lease and any extension thereof Landlord shall cause to be operated and maintained said parking area and all entrances, exits, driveways and walkways, in first-class condition and state of repair, such operation and maintenance to include without limitation, lighting, striping, traffic control, removal of snow, ice, rubbish and debris and surfacing and resurfacing with a hard surface. As to parking area contained in Parcel A, it shall be Tenant's obligation to direct traffic, remove snow, ice, rubbish and debris thereon; in all other respects Landlord's obligations set forth herein shall apply to Parcel A."

[3] "59. Tenant covenants and agrees to pay to Landlord during each lease year the sum of Fifteen Thousand, Nine Hundred Sixty-Nine Dollars and Twenty Cents ($15,969.20) towards the privilege of customer parking in Parcel D and the privilege of customer parking in Parcel A. In consideration of this payment, Landlord guarantees, and it is an express condition of the operation of this lease, that a parking area for no less than six hundred (600) cars be constructed and maintained in the said shopping center and that Tenant's customers shall at all times during the term hereof have the right to park in the said area without any charge for the first hour of such parking.

"Landlord also covenants that the parking areas for the shopping center will be multi-level in construction and that the plans therefor will have the complete approval of the City of Middletown, both of these representations being conditions precedent to the operation of this lease."

Center. Paragraph 59 of the lease provided that the defendant pay to the plaintiff an annual amount for the privilege of customer parking in parcel D and parcel A.[4] The plaintiff guaranteed that a parking area for 600 cars would be constructed and maintained in the shopping center with the defendant's customers having the right to park in the area without charge for the first hour of such parking. First National Stores occupied space in the shopping center from 1966 until May 16, 1970, and its customers also were permitted to park under the same circumstances extended to the defendant's customers.

The defendant argues in its brief that the availability of 600 parking spaces "for use by the defendant's customers" is an express condition of the lease; that it is an erosion of its rights to permit use of the space by monthly parkers who work in the area; and that it constitutes a breach of a material condition of the lease justifying a rescission of the entire agreement. On the contrary, paragraph 59 provides only that "a parking area for no less than six hundred (600) cars be constructed and maintained in the said shopping center" and paragraph 48 provides that tenant's customers shall have the right to park there in common with the other tenants and their employees, agents, customers and invitees.

The lease, dated August 1, 1963, recites that the city of Middletown was in the process of erecting a multi-level parking facility on land owned by it, which was designated parcel D. In the stipulation of the parties it is agreed that the town of Middletown (the parties have used the words "city" and

---

[4] Parcel A is referred to in the lease as "a twelve-car detached service station with 14,998 square feet of space," as shown on an attached plot plan.

"town" interchangeably) is the owner and operator of the parking facility constructed on parcel D of the shopping center referred to in paragraphs 48 and 59 of the lease and that the facility contains 600 parking spaces. The parties also agreed by stipulation that: The town of Middletown has leased, on a monthly basis since the opening of the parking garage, the following average number of parking spaces in each fiscal year: 1966—103; 1967—166; 1968—199; 1969—262; 1970—301; 1971 (as of May 24, 1971) 269; and, in addition, the town issued free parking privileges to 43 of its employees and issued, by virtue of a lease, parking privileges to 6 employees of the 9th Circuit Court in Middletown. The finding as to the total monthly parkers, as requested by the defendant, is corrected to this extent. Employees of the defendant are also included in the number of monthly parkers.

Paragraph 59 of the lease, designated as a rider, which is the more detailed and specific of the two lease provisions relative to customer parking, contained two requisites which have been met: The parking area has been constructed and is being maintained by the city or town of Middletown, the owner and operator of the facility. The court must construe the provisions in a lease in accordance with the intention of the parties gathered from the language used in the light of the surrounding circumstances existing, and known to the parties, when the lease was made. *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.,* 142 Conn. 313, 319, 113 A.2d 863; 51C C.J.S., Landlord & Tenant, § 337 (c). The recitation in the lease dated and executed August 1, 1963, the stipulation of the parties and the finding of the court, recited above, attest to the fact that the lessor has complied with the requirement that

the parking facility be constructed and maintained in the shopping center.

We agree with the conclusion of the court that the plaintiff complied with the third requisite of paragraph 59, viz., that the tenant's customers at all times during the term of the lease have the right to park in the area without any charge for the first hour of parking. The conclusions of the court are supported by the following facts which are not disputed. The parking area located in parcel D consists of two levels and the upper level is uncovered. The number of parking privileges extended to customers of Sears, Roebuck and Company and First National Stores according to the validations were as follows: 1966—116,610; 1967—150,185; 1968—159,156; 1969—161,174; 1970—142,467. From July 1, 1970, until May 24, 1971, a period during which First National Stores did not occupy the shopping center, the number of customer validations decreased to 100,493. The parking facility has not been filled since the 1969 Christmas shopping season. The defendant's customers are permitted to use the facility without charge, for the first hour of parking, and the few occasions when the facility was filled occurred on Fridays during the late afternoon and evening hours. In addition, the court found that since 1965 the parking facility has been open and available to the defendant's customers for parking at all times except during the Christmas shopping season in 1967, 1968 and 1969, when the parking facility was filled on no more than six occasions and for periods of no longer than ten minutes. This finding is supported by the evidence, properly admitted and printed in the appendices to the briefs. Practice Book § 718; *Consiglio* v. *Warden,* 160 Conn. 151, 158, 276 A.2d 773.

## III

The defendant argues in its brief that in the event of a breach of a condition of a lease so fundamental in its result that the breach defeats the object of the undertaking of the parties, equity will relieve the injured party by rescinding the entire agreement. The defendant strongly relies on the case of *Neuschtat* v. *Rosenthal,* 87 Conn. 400, 404, 87 A. 741. That case, however, is distinguishable from the case before us. In the *Neuschtat* case the lessors agreed to construct and repair buildings and provide tools to work the leased premises which the court concluded was the principal consideration for the lease. The court held that the character and persistence of the lessors' breach created an impossibility for the lessees of working the premises at a profit so that they were entitled in law to treat the lease as repudiated. In that case there was a failure of the principal consideration resulting in an impossibility, thereby justifying rescission of the lease. We recognize the fact, as argued by the defendant, that the availability of parking is a prerequisite to the successful operation of a retail store in today's automobile-oriented society, but after the parking area in parcel D was constructed and maintained the plaintiff-lessor only obligated himself to guarantee that the tenant's customers should at all times during the term of the lease have the right to park without any charge for the first hour of parking.

Rescission is not warranted merely for a failure exactly to perform but only for an unjustified default to perform the basic terms of a contract. *Speed* v. *Bailey,* 153 Md. 655, 660, 139 A. 534. Before a default of one party will give the other the right of rescission, the failure to perform an es-

sential or substantial term or condition of the lease must be in regard to matters which go to the essence or root of the lease or which would render the performance of the remainder a thing different in subtance from that which was contracted for, defeating the object of the parties in making the agreement. *Loveland* v. *Aymett's Auto Arcade, Inc.*, 121 Conn. 231, 235, 236, 184 A. 376; *Tichnor Bros.* v. *Evans,* 92 Vt. 278, 102 A. 1031; *Clarke Contracting Co.* v. *New York,* 229 N.Y. 413, 128 N.E. 241; 17 Am. Jur. 2d, Contracts, § 504; see Restatement, 2 Contracts § 397. Since the defendant has not shown that the plaintiff has failed to perform the principal consideration for the lease resulting in an impossibility of carrying out the object of the agreement by the tenant, the ruling of the court that rescission of the lease is unwarranted is not erroneous under the rule of the *Neuschtat* case, supra. See *Resnik* v. *Morganstern,* 100 Conn. 38, 42, 122 A. 910.

## IV

In its brief the defendant argues that the plaintiff has allowed noncustomer monthly parkers to occupy a substantial portion of the available spaces and assigns as error the trial court's refusal to find that "the elimination from defendant's use of 103 to 350 of the parking spaces constituted a partial eviction of defendant" extinguishing its liability for parking rent. The test of when an act constitutes a partial eviction is whether it results in a deprivation of some right or appurtenance to the premises to which the tenant is entitled. 49 Am. Jur. 2d 316, Landlord & Tenant, § 301. There is no dispute that the parties never intended that the defendant was to have the entire 600 parking spaces exclusively. Under paragraphs 48 and 59 of the

lease the lessor only guaranteed that the tenant's customers would have the privilege or right to park in the designated area free of charge for the first hour. This right, however, was to be "in common with the other tenants of such shopping center and their employees, agents, customers and invitees." The defendant is, in effect, claiming an interference with its customer parking privilege. The court has found as a fact, supported by competent evidence printed in the appendices to the briefs, that the parking facility has been open and available at all times except during the Christmas shopping seasons in 1967, 1968 and 1969, when it was filled on no more than 6 occasions and for periods of no longer than 10 minutes, and that the few occasions it was filled occurred on Fridays during the late afternoon and evening hours. It is noted that the defendant in its brief also refers to the offending parkers as all day monthly parkers. The court also properly found that employees of the defendant were included in the number of monthly parkers and that the parking facility had not been filled since the 1969 Christmas shopping season. In fact, the number of customer parking privilege validations decreased by more than 42,000 during the first eleven months of 1971. At the time of the execution of the lease the defendant was aware that the parking facility was to be constructed, owned and operated by the town of Middletown and that it would be used by customers of the shopping center with others having a right to park in the facility. See *McLarren* v. *Spalding,* 2 Cal. 510, 514.

The conclusion reached by the court that the defendant failed to establish a partial eviction so that there is no suspension of the obligation to pay rent must stand since it is logically and legally consistent

with the facts found. *Sheridan* v. *Planning Board,* 159 Conn. 1, 13, 266 A.2d 396. The defendant in its brief argues that under the trial court's interpretation of the lease all the parking spaces could be rented to noncustomer parkers, depriving the defendant of any benefit for its rental payments. The court was in error in making such an interpretation and in so concluding. The defendant would not be deprived of a remedy under those circumstances. The defendant has simply failed to establish facts sufficient to warrant a finding of partial eviction.

There is no error.

In this opinion the other judges concurred.