[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Cabaret, Inc., brought this action against defendants, Martin and Archambault Limited Partnership, and Bromson Street North, Inc., seeking replevy of collateral pursuant to a security agreement. The defendant raised two special defenses: (1) that the plaintiff's interest in the collateral is subordinate to a third party, SNET Credit; and (2) that the plaintiff waived installment payment deadlines by repeatedly accepting late payments from the defendants.
The evidence produced at trial established the following facts:
The plaintiff is the holder of a promissory note, dated March 19, 1991, in the principal amount of $102,500.00 from the defendants. The note is secured by a security agreement in certain collateral including all current and after acquired inventory, accounts receivable, equipment, furniture, machinery, personal property, fixtures, and intangibles located at the defendants' business at 70 Union Street in Hartford. The plaintiff perfected its interest in the collateral by filing a UCC-1 financing statement with the secretary of state on March 29, 1991. The promissory note called for monthly payments of $2,177.82, to the plaintiff on the first day of each month beginning April 1, 1991. The plaintiff received its last payment under the note from the defendant on July 1, 1991. No subordination agreement was ever executed by the plaintiff and any institutional lender.
Plaintiff notified the defendants in writing on September 20, 1991 that it was exercising its option to accelerate payment and demanding that the collateral be made available to the plaintiff. The defendants failed to comply with this demand. On several occasions, the plaintiff accepted late payments from defendants.
The defendants failed to produce credible evidence on the issue raised by the special defense of waiver. Section 13 of the security agreement expressly provides that "no waiver by the secured party of any default shall operate as a waiver of any other default or of the same default on a different occasion." The court rejects defendants' argument that the plaintiff waived its right to accelerate payments by accepting late payments from the CT Page 9157 defendants.
The critical issue, therefore, is whether the plaintiff's security interest in the collateral is subordinate to that of SNET Credit. Secured transactions such as the instant security agreement are governed by Article 9 of the Uniform Commercial Code (Connecticut General Statutes 42a-9-101 et. seq.).
A security agreement is effective "according to its terms between the parties, against purchasers of collateral and against creditors" except as otherwise provided by the code. Conn. Gen. Stat. 42a-9-201. Nothing in Article 9 prevents a party with priority from subordinating its interest. Conn. Gen. Stat. 42a-9-316. Whether the plaintiff subordinated its interest in the collateral to SNET credit must be determined according to the language contained in the security agreement.
The language in the agreement must be interpreted with fundamental principles of contract law in mind. The intention of the parties to the contract is controlling. Intent is determined from the language of the agreement in light of the situation of the parties and the circumstances of the transaction. The critical question is what intention is expressed in the language used. Construction Company, Inc. v. Rissil Construction Associates, Inc., 181 Conn. 317, 320; 435 A.2d 343, 344-45
(1980). The language used must be given its plain meaning. Collins v. Sears Roebuck Co., 164 Conn. 369, 373-74,321 A.2d 444 (1973). The agreement must be construed as a whole and in such a fashion as to give effect to every provision, if possible. Central New Haven Development Corp. v. La Crepe, Inc., 177 Conn. 212, 215; 413 A.2d 840,841 (1978).
Section 21 of the security agreement provides: "This agreement shall be subordinate to the lien of any security interest in the collateral to any institutional lender and upon request the secured party will execute a Subordination Agreement upon terms and conditions acceptable to said institutional lender." The defendant argues that this section created a self-executing subordination provision. This argument is not persuasive because it is inconsistent with the plain language of Section 21. The language of CT Page 9158 section 21 clearly contemplates the execution of a subordination agreement between the plaintiff and any institutional lender. According to the language, any subordination of the plaintiff's interest does not occur automatically, but as the result of an independent agreement between the plaintiff and the institutional lender to which it might subordinate its interest. The plaintiff never executed a subordination agreement with SNET Credit or any other institutional lender. Therefore, no subordination ever occurred.
Security interests are perfected by the filing of a UCC-1 financing statement with the secretary of state. Conn. Gen. Stat. 42a-9-302. Conflicting interests in the same collateral are prioritized according to the date of filing or perfection. Conn. Gen. Stat. 42a-9-312(5). However, a "purchase money security agreement" has priority over a conflicting interest in the same collateral. Conn. Gen. Stat. 42a-9-312(4). A security interest is a "purchase money security interest" to the extent that "it is taken by the seller of the collateral to secure all or part of its price." Conn. Gen. Stat. 42a-9-107.
The plaintiff filed a UCC-1 form with the secretary of state perfecting its interest in the collateral described in the security agreement on March 29, 1991. SNET Credit's UCC-1 forms (Defendant's exhibits 2, 4, and 8) perfecting its interests were filed after that date. A UCC-1 form perfecting SNET Credit's interest in equipment described as "Merlin Plus Telephone Equipment" was filed with the secretary of state on March 5, 1990. The plaintiff concedes that this interest predates its own interest with regard to the telephone equipment only. The court agrees with this conclusion. The plaintiff also concedes that the UCC-1 forms marked as defendants' exhibits 2 and 4 are purchase money security agreements to the extent that they were taken as part of financing agreements to enable the defendants to acquire specific equipment. The court agrees that these interests have priority as to the specific equipment described in those UCC-1 financing statements.
For the foregoing reasons, the plaintiff is entitled to possession of the collateral with the exception of the "Merlin Telephone Equipment" and the equipment described in the purchase money security agreements. CT Page 9159
Accordingly, judgment may enter authorizing the plaintiff to take immediately possession of the collateral as noted above.
Schaller, J.