Argued March 4, affirmed March 27, petition for rehearing
denied April 30, 1968

COX, *Appellant, v.* THE OHIO NATIONAL
LIFE INSURANCE COMPANY,
*Respondent.*
438 P. 2d 998

*Norman K. Winslow,* Salem, argued the cause and filed the briefs for appellant.

*Allan G. Carson,* Salem, argued the cause for respondent. With him on the brief were Carson, Carson & Carson, Salem.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

This appeal is from a court decision for the defendant in an action at law to recover money claimed due by plaintiff from defendant under a written contract. By its terms, plaintiff was made a general agent of defendant insurance company. After several years of service plaintiff resigned his agency by letter dated and mailed February 28, 1956, and defendant accepted it as of that date. The contract, which was on defendant's printed form, provided in pertinent part:

"Sec. 5.   *   *   * If this contract is terminated   *   *   * by resignation of the General Agent, he   *   *  · * shall   *   *   * receive renewal commissions that accrue   *   *   *.

"*   *   *

"(e) Renewal commissions shall not be payable after the termination of this contract unless the renewed insurance in force,   *   *   * equal or exceeds ($1,000,000.00)   *   *   * at the time of such termination. Renewed insurance in force under this provision is defined as insurance on which more than one annual premium has been paid to the COMPANY in cash.

"*   *   *

"Sec. 15.   *   *   * This contract may be terminated by either party hereto, upon written notice.   *   *   * [T]he General Agent shall immediately make final reports   *   *   * and his authority as General Agent   *   *   * shall immediately cease on giving or mailing notice of termination."

Plaintiff claims he had over $1,000,000 in "renewed insurance in force" at date of termination. Defendant claims he then had $840,156 in force. The difference arises on questions of fact and law, as follows:

a. Did the contract terminate on February 28, 1956, when plaintiff dated and mailed his resignation? If there was a later date of termination, additional poli-

cies would have to be counted toward the $1,000,000 in force as they were "renewed" by their holders' payment of second-year premiums in March, 1956.

b. Did some policies that were renewed once terminate because they were not again renewed before termination of the contract?

c. Is the double indemnity for accidental death feature, which was in some of the life insurance contracts, "insurance in force?"

d. Are return of premium benefits which were in some policies "insurance in force?"

e. Are policies on lives of juveniles, which provide additional benefits by way of waiver of premium if the payor dies, with reference to such benefits which were in some policies, "insurance in force?"

These questions, the court believes, fairly state the points of controversy and by their determination all assignments of error are met. For computation purposes only the trial court credited some term life insurance riders which plaintiff claimed were insurance in force toward the $1,000,000 requirement. With their inclusion the total requirement still was not met. Thus, this finding of the trial court is not in issue.

■ The first question is simply one of effectuating the clear language of Sec. 15 of the contract. The trial court's conclusion in this regard was correct:

"Plaintiff's letter * * * dated February 28, 1956 was his resignation * * * and was effective on that date. * * * A different date could have been selected by plaintiff, but he chose to resign immediately. Winding up the agency affairs * * * did not extend the contract * * *."

■ The second question is almost purely of fact and involves whether several individual policies were in

force on February 28, 1956. From the voluminous records we find there was evidence to support the trial court's findings in this regard.

"* * * [T]he evidence presented supports the finding of the trial court. It is not our function to review the evidence * * *." *Brownsville Part. Bd. v. Overhead Door*, 244 Or 424, 425, 417 P2d 1019 (1966).

■ The third, fourth and fifth questions each relate to what is meant by the term "renewed insurance in force." The contract purports to define the phrase "renewed insurance in force" in this context by stating it is "insurance on which more than one annual premium has been paid." But the contract by this definition actually only defines what is meant by "renewed." It does not define "insurance in force." Trying to give the words their ordinary meaning resulted in arguable differences of opinion between experienced life insurance executives of defendant and the general agent, plaintiff. There seems to be a dearth of helpful precedent, probably because interpretations depend upon the particular contract. It is a general rule that a life insurance agent has no right to renewal commissions after termination of his agency, except as his contract with the company provides for them. *Locher v. N. Y. Life Ins. Co.*, 200 Mo App 659, 208 SW 862 (1919); Notes, 79 ALR 478, 136 ALR 167.

The trial court allowed the plaintiff to testify what "insurance in force" meant to him:

"A. [Plaintiff] Insurance in force has always meant to me the amount of money the insured or beneficiary might receive. In other words, if this man died as far as the insured was concerned, this was the amount that he would receive."

Plaintiff's counsel strenuously objected to the court allowing the defendant's witnesses to do the same, principally on the ground they were construing their own contract.

Johnson and Ward, witnesses of the defendant, testified in greater detail than plaintiff about the meaning of the term. They relied on their experience as insurance executives in testifying as to the common industry understanding of these words. The defendant introduced, over plaintiff's objection, a Life Insurance FACT BOOK 1964, published by the Institute of Life Insurance. The purpose of the testimony and the exhibit was to show the custom and usage of the industry as to the meaning of "insurance in force." Custom and usage was not pleaded. The plaintiff's objections were not on the grounds of insufficient pleadings. This point is made for the first time on appeal. Where a proper objection has not been made in the trial court, unless there was serious error in receiving the evidence, it will not be considered on appeal. *State v. Avent,* 209 Or 181, 302 P2d 549 (1956).

If proper objection had been made in this case there was good reason to receive the evidence over the objection.

ORS 41.900 provides:

"Evidence may be given of the following facts:
"* * *

"(12) Usage, to explain the true character of an act, contract or instrument, where such true character is not otherwise plain * * *."

Usually, it is required that usage must be pleaded if evidence thereof is to be heard. *Shaw Wholesale Co. v. Hackbarth,* 102 Or 80, 198 P 908, 201 P 1066

(1921). But in *Harrison v. Birrell,* 58 Or 410, 115 P 141 (1911), where plaintiff sought to recover commissions for marine insurance sold, the court said:

> "Insurance agents and brokers in their negotiations use words fraught with much meaning, which would have but little sense to one unacquainted with the business." 58 Or at 419.

Evidence had been excluded about custom and usage in the insurance industry as to the matter in dispute. This court observed that such evidence was of a general custom, and reversed the trial court's action in excluding it. This court said:

> "A general custom or usage need not be pleaded. 12 Cyc. § 1097. Where a local custom is relied upon  \*  \*  \*  it must be pleaded  \*  \*  \*." 58 Or at 419.

In *Ensworth v. New York Life Ins. Co.,* 8 F Cas 728 (No. 4496) (CCND Ohio 1868), where a life insurance agent was seeking, after termination of his agency, to recover for renewal premium commissions on policies "in force," the court held:

> "\*  \*  \*  [A] well-established custom among life insurance companies and their agents, as to the kind and extent of the property that agents may possess in the lists of the policies they procure, may be considered as explaining the contract as claimed  \*  \*  \*." 8 F Cas 729.

Turning to the evidence of custom and usage in this case, the court finds in the 346-page transcript at least eight places where witnesses were questioned in one way or another about what is meant by "insurance in force" in the industry and the context in which it is here questioned.

Pages 117 and 118 of the "FACT BOOK" were

received in evidence after two of defendant's witnesses had testified it was published by an information and public relations organization, independent of individual insurance companies, and is "considered as an authority in the insurance industry." The trial court, when receiving it, said, "* * * it is admitted, as some evidence but not as conclusive evidence of this term." The two pages are entitled "Glossary (Simplified definitions for those who use the Fact Book)." Among seventy-one defined terms in this Glossary are:

"LIFE INSURANCE IN FORCE The sum of the face amounts, plus dividend additions, of life insurance policies outstanding at a given time. Additional amounts payable under accidental death or other special provisions are not included."

and

"FACE AMOUNT The amount stated on the face of the policy that will be paid in case of death or at the maturity of the contract. It does not include dividend additions, or additional amounts payable under accidental death or other special provisions."

The cumulative effect of the evidence is that there is a general usage in the life insurance industry as to the meaning of "insurance in force," consistent with the above quoted definitions. The trial court was correct in receiving it as some, but not conclusive, evidence.

The findings and conclusions of the trial court on all points that logically fall within questions three, four and five, as posed at the beginning of this opinion, are consistent with the law and evidence as we have discussed it, and we find no error.

We have given careful consideration to each assignment of error although each may not have been

directly discussed herein. Although the precedents principally relied upon in this opinion were not cited in either brief, we have considered those that were cited.

Judgment is affirmed.