**Elizabeth DiCARLO, Plaintiff,**

v.

**SURETY LIFE INSURANCE COMPANY, a Utah corporation, Defendant.**

**Civ. No. 87–773–FR.**

United States District Court,
D. Oregon.

June 19, 1989.

Norman J. Wiener and R. Alan Wight, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff.

Craig D. Bachman, Danny L. Hitt, and Wade R. Keenon, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matters before the court are the following motions:

(1) the motion (# 47) of defendant, Surety Life Insurance Company (Surety), for summary judgment or partial summary judgment against plaintiff, Elizabeth DiCarlo;

(2) the motion (# 78) of Surety to strike portions of DiCarlo's affidavit and exhibits in opposition to the motion for summary judgment.

## BACKGROUND

Elizabeth DiCarlo is a former executive sales director for Surety, a life insurance company, which is affiliated with Sears, Roebuck & Co. DiCarlo alleges that Surety improperly terminated her contract and tortiously destroyed her business. DiCarlo seeks damages flowing from the alleged breach of contract and tortious activity, including renewal and override commissions, damages for the destruction of the business of her life insurance agency, damages for emotional distress, and punitive damages.

## UNDISPUTED FACTS

In 1985, DiCarlo became an associate agent for Surety. On July 20, 1985, DiCarlo was promoted to the position of district manager. On February 25, 1986, DiCarlo was promoted from district manager to the position of area sales manager. On April 15, 1986, DiCarlo was promoted from area sales manager to the position of executive sales director. DiCarlo was terminated by Surety on June 11, 1987.

The relationship between DiCarlo and Surety as to the position of executive sales director is set out in the Executive Sales Director Contract (the Contract) dated April 15, 1986.

## CONTENTIONS OF THE PARTIES

Under the Contract, DiCarlo's right to renewal commissions upon the termination of her employment depends on whether she

was terminated with or without just cause. Surety contends that DiCarlo was terminated because of improper telemarketing and advertising practices. DiCarlo contends that she was terminated without just cause.

DiCarlo's first claim is for breach of the implied covenant of good faith and fair dealing in the Contract. The second claim is for restitution of the reasonable value of the benefits conferred by DiCarlo upon Surety. The third claim is for breach of the Contract. The fourth claim is for the conspiracy between Surety and regional manager J. Robert Neumann to terminate DiCarlo in order to convert her business and commissions. The fifth claim is for a declaratory judgment that the provision in the Contract regarding forfeiture of renewal commissions constitutes a penalty and is void. The sixth claim is for interference with business and contractual relationships by means of slander.

## DISCUSSION

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact is resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). However, summary judgment will be denied only where there is a dispute over material facts that could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The plaintiff must make a showing sufficient to establish the existence of each element of each claim because a complete failure of proof concerning an essential element of a claim will render all other facts immaterial to that claim. *Celotex, supra*, 477 U.S. at 324, 106 S.Ct. at 2553.

## ANALYSIS AND RULINGS

### 1. *Motion to Strike*

■ Surety moves to strike Exhibits A and B to DiCarlo's memorandum opposing the motion for summary judgment on the grounds that these exhibits are not properly authenticated. Surety moves to strike Exhibits B and D attached to the affidavit of DiCarlo in opposition to the motion for summary judgment on the same grounds. Surety also moves to strike various statements in DiCarlo's affidavit on the grounds that they are hearsay, not based on personal knowledge, not based on a proper foundation, or mere conclusion, argument or opinion.

DiCarlo responds that the four exhibits challenged by Surety were used as exhibits and authenticated in the depositions of DiCarlo and/or P. Thomas Chester, the president of Surety. DiCarlo notes that three of the documents were originally produced by Surety. The court finds that the four exhibits have been properly authenticated for consideration in the motion for summary judgment.

In response to the objections to her affidavit, DiCarlo has provided authenticated copies of the deposition testimony of various witnesses, and she cross-references the appropriate portions of these depositions to her affidavit. DiCarlo argues that in the challenged portions of her affidavit, she is either relying on personal knowledge or referring to evidence in the record so that she can comment upon it in the context of her personal knowledge.

It is undisputed that DiCarlo worked as an agent and executive sales director for Surety for about two years. Therefore, she is competent to testify from personal knowledge as to her own experiences and relationship with Surety and its agents.

Intermingled with DiCarlo's averments based on personal knowledge are state-

ments which are, in whole or in part, conclusions, arguments or opinions. Although these statements are not properly included in the affidavit, it would be overly burdensome to identify and strike each such statement. In consideration of the affidavit, the court will give such statements only the limited weight which they deserve.

The affidavit also contains a number of statements which are hearsay or which are beyond DiCarlo's personal knowledge. In her response, DiCarlo refers the court to the sources of these statements in deposition testimony or other evidence. The court will discount any hearsay or incompetent statements as they appear in DiCarlo's affidavit, and will look to the actual deposition testimony or exhibit which is the source of the statement. However, the court will not strike these statements from DiCarlo's affidavit because to do so would make the affidavit incomprehensible.

Therefore, the motion of Surety to strike DiCarlo's affidavit and exhibits is denied.

### 2. *Motion for Summary Judgment*

Surety moves for summary judgment or partial summary judgment on most of DiCarlo's claims. The court will address the issues separately.

#### (A) Claim for Breach of the Implied Covenant of Good Faith

■ In her first claim, DiCarlo alleges that Surety breached the Contract of April 15, 1986 by purporting to terminate her with cause where there was no cause for termination. Surety moves for summary judgment against the third claim on the grounds that there was cause for DiCarlo's termination, and Surety reasonably believed that there was cause for termination.

A claim for breach of the implied duty of good faith and fair dealing will be determined by reference to the express agreement and to the reasonable contractual expectations of the parties. *Best v. United States Nat'l Bank,* 303 Or. 557, 562, 739 P.2d 554 (1987). Surety contends that DiCarlo's telemarketing and advertising practices violated the Contract of April 15, 1986, and that she was terminated with cause. Surety also contends that even if there was no actual cause for her termination, it reasonably believed that there was cause and did not act in bad faith.

DiCarlo responds that certain agents of Surety disliked her and sought to block her advance because she is a woman. DiCarlo contends that her practices regarding telemarketing scripts and the Sears and Surety names did not violate the Contract of April 15, 1986. For example, DiCarlo argues that the telemarketing scripts used in her agency did not differ materially from the scripts provided by Surety. DiCarlo contends that Surety's complaints about her marketing practices were an attempt to set her up for termination, and that other agents were not terminated for the same behavior.

DiCarlo has submitted sufficient evidence in support of these contentions to create genuine issues of material fact regarding the alleged breach of the implied covenant of good faith and fair dealing. Therefore, Surety's motion for summary judgment on the first claim is denied.[1]

#### (B) Claim for Restitution

■ DiCarlo's second claim seeks restitution of the reasonable value of benefits conferred by her upon Surety. Surety moves for summary judgment against the second claim on the grounds that restitution is not available where the plaintiff is suing upon an enforceable contract which governs the parties' rights.

The controlling case on this point is *Kashmir Corp. v. Patterson,* 289 Or. 589, 616 P.2d 468 (1980). In *Kashmir,* a house builder brought an action in two counts: one for monies remaining due under an express, written contract; and the other for the reasonable value of services rendered in building the house. The defendants' answer admitted the existence of the contract and raised various defenses. The Supreme Court affirmed an order striking

---

**1.** Surety also contends that DiCarlo's third claim for breach of contract must fail for the same reasons as the first claim. The court finds that there are issues of fact regarding this claim, and the motion for summary judgment on the third claim is denied.

the count for the reasonable value of services.

The *Kashmir* opinion holds that a claim for the reasonable value of services is a remedial device formulated to permit recovery where the application of contract law does not impose any obligation upon a party. 289 Or. at 591, 616 P.2d 468. The Court noted that a plaintiff may plead recovery upon an express contract and, in the alternative, plead a right to recovery in *quantum meruit* or restitution. However, where the validity and enforceability of the contract are not in issue, and the contract by its terms governs the parties' rights, a restitution claim is no longer valid. 289 Or. at 593–94, 616 P.2d 468.

In this case, DiCarlo alleges in her third claim that her termination breached the Executive Sales Director Contract of April 15, 1986. Surety has admitted the existence and enforceability of this Contract. The Contract, by its terms, defines the relationship between Surety and DiCarlo and governs the compensation due to DiCarlo.

DiCarlo contends, however, that there are issues as to the enforceability of a writing executed by her at Surety's insistence on March 26, 1987. This agreement provides that in consideration of being able to continue as a representative of Surety, DiCarlo agrees only to use advertising material (including telemarketing scripts) or sales presentations prepared by Surety. The agreement contains an acknowledgment that any violation of its provisions "may result in the termination of said contracts with cause." DiCarlo contends that the agreement of March 26, 1987 is unenforceable due to fraud and coercion.[2]

However, even if the agreement of March 26, 1987 were unenforceable, it would not affect the enforceability of the Contract of April 15, 1986. The agreement of March 26, 1987 does not address compensation or renewal commissions. If the agreement of March 26, 1987 is found to be unenforceable, the court will then determine whether there was cause for DiCar-

lo's termination under the Contract of April 15, 1986. However, since there is no issue regarding the enforceability of the Contract of April 15, 1986, the court finds that DiCarlo's claim for restitution is not viable.

Surety's motion for summary judgment on DiCarlo's second claim for restitution is granted.

### (C) Claim for Civil Conspiracy

■ In her fourth claim, DiCarlo alleges that Surety and J. Robert Neumann, a regional director for Surety, conspired to terminate her for cause, so as to get the benefit of her thriving business and convert her renewal commissions to their own benefit. Surety moves for summary judgment against the fourth claim on the grounds that the claim is legally insufficient and is not supported by any evidence.

Surety argues that a civil conspiracy is not an independent tort, so that DiCarlo must show damage flowing from the commission of an unlawful overt act and not merely from the conspiracy itself. *See Bliss v. Southern Pac. Co.*, 212 Or. 634, 642, 321 P.2d 324 (1958). Surety argues that DiCarlo has not shown the existence of any independent tort because the torts of conversion and intentional interference with contract are inapplicable to the facts alleged. DiCarlo responds that she has produced evidence of several independent torts, including slander, interference with contractual and business relations, fraud, and coercion.

It is not necessary to delve into the question of whether there is an "independent tort," however, because DiCarlo has failed to produce evidence from which the existence of a conspiracy between Surety and Neumann may be inferred. DiCarlo has produced, at most, evidence that Neumann felt some anger or frustration toward her, but no evidence that Neumann and Surety agreed to the alleged conspiracy. A meeting of minds on the object of the conspiracy is an essential element of a conspiracy claim. *Bonds v. Landers*, 279 Or. 169, 174, 566 P.2d 513 (1977).

---

**2.** Although DiCarlo relies heavily on alleged fraud and coercion, she does not raise the issues of fraud or coercion in her pleadings, and she does not include these issues in her recent motion to amend.

Since DiCarlo has failed to produce evidence supporting an essential element of her claim for civil conspiracy, Surety's motion for summary judgment on DiCarlo's fourth claim for relief is granted.

(D) Claim for Declaratory Judgment Regarding Forfeiture

■ In her fifth claim, DiCarlo seeks a declaratory judgment that the provision in section 18G of the Contract regarding forfeiture of renewal commissions constitutes an unenforceable penalty. DiCarlo contends that the provision is void as against public policy because it causes a forfeiture of DiCarlo's anticipated death, disability and retirement income. Surety moves for summary judgment against the fifth claim, contending that the forfeiture provision is not an unenforceable penalty but a valid condition on an agent's right to receive renewal commissions.

Section 18G(2) of the Contract provides:

2. Renewal Commissions. Commissions payable on premiums paid after the first policy year on Company Products sold by the EXECUTIVE SALES DIRECTOR and renewal overrides (including inherited renewal overrides, if any) on Company Products sold by Area Sales Managers, District Managers, Unit Managers and Associates assigned to the EXECUTIVE SALES DIRECTOR are fully vested if one or more of the following conditions occur:

(a) The EXECUTIVE SALES DIRECTOR dies; or

(b) The EXECUTIVE SALES DIRECTOR has become totally and permanently disabled preventing the EXECUTIVE SALES DIRECTOR from being employed for compensation or profit as determined by the COMPANY; or

(c) The Contract is terminated by the COMPANY without cause.

In the event of termination of the Contract by the EXECUTIVE SALES DIRECTOR within the first or second Contract Years or in the event of termination at any time by the COMPANY with cause, all renewal commissions shall be forfeited.

Section 18G(4) describes additional circumstances in which renewal commissions may be forfeited, such as attempts by an Executive Sales Director to induce agents or policyholders to terminate their association with Surety.

An insurance agent has no right to renewal commissions or other compensation except as provided by the contract. *Cox v. Ohio Nat'l Life Ins. Co.*, 250 Or. 7, 11, 438 P.2d 998 (1968). An insurance agent who does not meet the contractual requirements may forfeit the right to renewal commissions. *Bohrnstedt v. Travelers' Ins. Co.*, 123 Or. 539, 259 P. 419, 262 P. 938 (1928). In *Bohrnstedt,* the court rejected the plaintiff's argument that such a provision was an unenforceable penalty, stating:

It will thus be seen that plaintiff's right to commission on renewal premiums is predicated upon two propositions: (1) that he has not violated any of the obligations of his contract; (2) that he has not entered the employment of any other life insurance company, to work in the territory specified, within one year from date of the termination of the contract.

123 Or. at 547, 259 P. 419, 262 P. 938.

DiCarlo cites a number of authorities for the general proposition that forfeitures are not favored by the law and that a contractual forfeiture provision will be strictly construed. However, these cases are not closely on point.

DiCarlo also contends that she has a vested right to the renewal commissions and that the renewal commissions may not be forfeited because they were intended as retirement income. However, it is not necessary to consider these contentions as they contradict the clear language of section 18G(2) that renewal commissions "are fully vested *if* one or more of the following conditions occur ... [t]he Contract is terminated by the COMPANY *without cause.*" (Emphasis added). The provision goes on to say that "in the event of termination at any time by the COMPANY *with cause, all renewal commissions shall be forfeited.*" (Emphasis added).

Therefore, DiCarlo's right to renewal commissions depends on whether she was terminated with or without cause. The "issues of fact" which DiCarlo lists in her response all relate to this question. However, they do not relate to whether the forfeiture provision is an unenforceable penalty, the issue posed by DiCarlo's fifth claim for declaratory relief.

The court finds that as a matter of law the provision for forfeiture of renewal commissions after termination with cause is a reasonable condition and not an unenforceable penalty. Therefore, DiCarlo's fifth claim for declaratory judgment must fail, and Surety's motion for summary judgment on the fifth claim is granted.

### (E) Claim for Fraud and Coercion

■ Surety moves for summary judgment against DiCarlo's claim for fraud and coercion. DiCarlo contends that the agreement of March 26, 1987 is unenforceable because her signature was induced through fraud and coercion. However, no claim for fraud or coercion appears in DiCarlo's pleadings, and she has not sought leave to amend her complaint to assert such a claim.

Apparently, DiCarlo has included claims for fraud and coercion in drafts of the pretrial order. This is not sufficient to bring such claims properly before the court. Therefore, the court will deny Surety's motion for summary judgment on the claims for fraud and coercion as premature and/or unnecessary.

### (F) Claim for Intentional Interference with Business

■ DiCarlo alleges in her sixth claim that on or about June 13, 1987, and thereafter, Surety and its agents interfered with DiCarlo's business and contractual relationships with subagents and others, and that Surety and its agents accomplished this interference by means of slanderous representations that DiCarlo had violated state insurance laws; that she was under investigation by the Insurance Commissioner of the State of Oregon; that she had lost or was about to lose her insurance license; and that agents associated with DiCarlo would lose their licenses.

Surety moves for summary judgment against the sixth claim on the grounds that (1) as a party to the Contract, Surety cannot be held liable for tortious interference, but only for breach of contract; and (2) Surety's actions are covered by the qualified privilege for statements made to protect the interests of the defendant or on subjects of mutual concern.

DiCarlo responds that the interference alleged is not interference with the Contract between her and Surety, but with separate contracts and business relations between DiCarlo and her subagents. DiCarlo has produced evidence that by June 13, 1987 (two days after Surety terminated her contract), she had begun to represent other life insurance companies and to license other agents in her office with those companies. DiCarlo asserts that Surety's slanderous statements interfered with these contractual relationships.

DiCarlo has presented sufficient evidence to create a genuine issue of fact regarding interference with contracts other than the Executive Sales Director Contract of April 15, 1986. In addition, DiCarlo contends that Surety was motivated by malice, which would vitiate the qualified privilege claimed by Surety. Genuine issues of fact exist regarding the applicability of the qualified privilege.

Therefore, Surety's motion for summary judgment against DiCarlo's sixth claim for intentional interference with contractual relations is denied.

### (G) Claim for Damages

Surety asks the court to rule that DiCarlo's recovery, if any, is limited to damages for loss of renewal and override commissions. Surety contends that there is no basis for an award of future earnings, other consequential damages, damages for emotional distress, or punitive damages.

The court's rulings on this motion for summary judgment leave intact three of DiCarlo's claims: breach of contract, breach of the covenant of good faith and fair dealing, and the tort of intentional interference with contractual relations. A

variety of damages may be available under these theories. The court finds that it is premature to rule now as to the damages available to DiCarlo upon trial of this action.

## CONCLUSION

Surety's motion (# 47) for summary judgment is granted in part and denied in part. The motion for summary judgment is granted as to DiCarlo's second claim for restitution, fourth claim for civil conspiracy, and fifth claim for a declaratory judgment. The motion for summary judgment is denied as to DiCarlo's first claim for breach of the covenant of good faith and fair dealing, third claim for breach of contract, and sixth claim for intentional interference with contractual relationships. The motion for summary judgment is denied as to DiCarlo's claim for fraud and coercion on the grounds that this claim is not properly before the court. The motion to limit DiCarlo's damages is denied as premature.

Surety's motion (# 78) to strike DiCarlo's affidavits and exhibits is denied.