[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON COUNTERCLAIM OF DEFENDANT EDWARD MILLER
This opinion determines the counterclaim filed by the defendant Edward Miller (Miller) in the above-captioned matter. The complaint in this matter filed by the plaintiff, New England Insurance Agency, Inc. (New England) has already been tried and decided in an earlier opinion by the undersigned filed on April 16, 1991. Reference should be made to this earlier opinion which, in addition to setting out the law on the issues decided at that time, also made a number of findings of fact some of which are involved in the counterclaim.[1]
We turn to the counterclaim which is in three counts and the allegations of which are denied in full by New England, the defendant on the counterclaim. Miller, the plaintiff on the counterclaim, makes the following allegations. The first count alleges that New England did not complete the terms of the written Employment Agreement[2] between New England and Miller in one or more of the following ways: that New England failed to pay all commissions due Miller for the months of December 1988 and January 1989 pursuant to Sections 3 and 14 of the Employment Agreement, that New England failed to pay Miller for the period from January 26, 1989 to February 25, 1989, any of the benefits due him under Sections 9 and 15 of the Employment Agreement, that New England failed to pay for costs of Certified Insurance Counselors (CIC) courses from 1983 to 1989 for professional standing pursuant to Section 9 of the Employment Agreement, that New England failed to pay disability insurance for Miller pursuant to Section 9 of the Employment Agreement, that on several occasions from 1983 to 1988 New England deducted from commissions due Miller amounts of quoted premiums which some of New England's clients failed to pay New England which deductions in violation of Sections 3 and 14 of the Employment Agreement and that Miller never received compensation "for the insurance business and commissions" that he "brought" to New England (where he joined it in 1983). It is also alleged that Miller is owed "in excess of $6,000.00 because of New England's failure to perform their agreements under the written Employment Agreement.
The second count in which it is alleged that Miller never received compensation for the business and commissions that he brought to New England contrary to New England's "oral" agreement with him was withdrawn by him at the end of the trial.
The third count, which sounds in unjust enrichment, alleges that Miller never received compensation for the business and commissions that he "brought" to New England who benefited therefrom in that New England has received premiums or a share thereof and will also receive premiums in the future, that New CT Page 9131 England gained new customers and additional goodwill for the future and that, accordingly, New England has been unjustly enriched.
Before proceeding the court points out that, as with the trial on the complaint, here also questions of credibility were presented to be resolved. While three witnesses testified during the presentation of evidence on the counterclaim, two of them, Edward Miller and Mathew Cassidy, had testified at length at the earlier trial.
In analyzing the issues presented it appears that there are three areas in which Miller is seeking compensation according to his post-trial brief. The first has to do with the business he allegedly brought to New England in 1983. The second has to do with whether he is entitled to any or all of the benefits under that agreement which he claims New England failed to afford him. Finally, the third has to do with moneys claimed to be owing to him for the thirty day period from January 6, 1989 to February 5, 1989 pursuant to section 15(b) of the employment agreement.
 I.
Turning to the insurance business that the Miller claims that he brought to New England when he joined it in 1983, there he argues that is entitled to be compensated out of the moneys that that business generated for New England in 1983 and 1984. Miller maintains that it was his opinion that he "owned" the business that he brought to New England and that he was promised ownership and points, in this regard, to the "Captive Agent Agreement" proffered to him by New England in December 1988 which he rejected. New England, on the other hand, claims that Miller is seeking to enlarge, for his benefit, the Employment Agreement that was negotiated and executed about a year into his actual employment with it. This contract, it claims, sets out a specific plan of compensation by way of salary and commissions on sales, that that was what Miller bargained for but now he makes claim for this extra-contractual benefit one month past the date of "his abrupt and voluntary termination" from New England. In short, New England claims that he has been fully paid under the terms of his Employment Agreement.
The credible evidence demonstrates that Miller's continuing to own the business that he brought to New England was never discussed. Cassidy also indicated that that was never discussed. The Employment Agreement, while drawn by New England's attorney was given, before its execution, to Miller to go over and he did in fact consult an attorney for that purpose. This agreement, as executed, plainly does not provide for any ownership of the business he brought to New England. Neither New England or Miller CT Page 9132 could produce a list of these customers that Miller brought with him upon become associated with New England.
We note here that it is not within the power of courts to create new and different agreements. Jay Realty Inc. v. Ahearn Development Corporation, 189 Conn. 52, 55, 453 A.2d 771 (1983); Collins v. Sears, Roebuck Co., 164 Conn. 369, 375, 321 A.2d 444
(1973). Where the parties have a written agreement "their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." Robert Lawrence Associates Inc. v. Del Vecchio, 178 Conn. 1, 14,420 A.2d 1142 (1979) quoting Didriksen v. Havens, 136 Conn. 41,48, 68 A.2d 1163 (1949); see Sturman v. Socha, 191 Conn. 1, 10,463 A.2d 527 (1983). Any private or unexpressed view Miller may have had about ownership of such business cannot properly be considered in construing the Employment Agreement. We say this, not only keeping in mind that it was never discussed but also pointing out that "the intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances surrounding the transaction." Ives v. Willimantic, 121 Conn. 408, 411,185 A. 427 (1936): Leonard Concrete Pipe Co. v. C.W. Blakeslee Sons, Inc., 178 Conn. 594, 598, 424 A.2d 277 (1936). Over the course of his association with New England, Miller accepted the salary and commission arrangement plainly set out in the Employment Agreement and the present claim of ownership was never discussed. The conduct of the parties may be considered in the construction of a contract. See e.g. Lar-Rob Bus Corporation v. Fairfield,170 Conn. 397, 407-408, 365 A.2d 1086 (1976). This court, therefore, cannot accept his claim that his written Employment Agreement with New England supports his claim for the ownership of any or all of the insurance business he brought with him and on account of which he seeks compensation therefor for 1983 and 1984.
Insofar as Miller maintains, apart from the Employment Agreement, that he is entitled to recover damages compensating him for the business he brought to New England on the grounds of unjust enrichment, the court cannot accept that claim based on the law and the credible evidence.
 "Unjust enrichment applies `wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' 5 Williston, Contracts (Rev. Ed.) 1479. `A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it contrary to equity and good conscience for one to retain a benefit which has come to him CT Page 9133 at the expense of another. Franks v. Lockwood, 146 Conn. 273, 278, 150 A.2d 215; Schleicher v. Schleicher, 120 Conn. 528, 534, 182 A. 162". Connecticut National Bank v. Chapman, 153 Conn. 393, 399, 216 A.2d 814. `With no other test than what under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard.' Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564-65, 244 A.2d 404."
Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242, 246,287 A.2d 379 (1971). "The question is: Did [New England] to the detriment of [Miller] obtain something of value to which [New England] was not entitled? Hixon v. Allphin, 76 Idaho 327, 333,281 P.2d 1042." Connecticut National Bank v. Chapman, 153 Conn. 393,399, 216 A.2d 814 (1966). There is no question that New England got something of value from Miller but he, without any discussion of "ownership" from 1983 to at least sometime in December 1988 accepted the compensation from New England as provided in the written Employment Agreement.[3] This court does not, on the credible evidence, perceive any injustice that could serve as a basis for recovery on the ground of unjust enrichment under the third count.
 II.
Miller also claims compensation by way of damages because of New England's failure to pay certain benefits under Section 9 of the employment agreement. This claim encompasses several matters.
Miller alleges that New England failed to pay for costs of CIC courses. The evidence justifies an award to Miller on this claim in the amount of $240.00 for one CIC course successfully completed by him.
He also claims that New England failed to provide disability insurance for him. In approaching this claim it is to be pointed out that both Miller and New England are in the insurance business. Miller has been so engaged since 1973 and is an intelligent person. The evidence adduced no credible evidence of any definition of "disability insurance" which Miller contends he was not furnished. There is also no reasonable basis, upon which it could be considered encompassed within any of the insurance coverage comprehended in section 9, i.e. "reasonable medical group insurance program" or "a group life insurance policy". Miller has CT Page 9134 not proven this claim.
Next, Miller claims damages under section 3 and 14 of the agreement for the deduction from commissions paid to him, on several occasions between 1983 and 1988, of premiums not paid by clients (presumably his accounts) to New England thus breaching as to him, sections 3 and 14 of the Employment Agreement. While there is no unbending rule as to the evidence by which compensation is to be determined, and although damages may be based on reasonable and probable estimates, it is equally clear that damages must be based on evidence, Fassenich v. DiNardo,195 Conn. 144, 153 A.2d (1985), and it cannot merely be speculative or subjective. Griffin v. Nationwide Moving Storage Co.,187 Conn. 405, 420, A.2d (1982). The burden is upon the party seeking damages to present evidence which affords a reasonable basis for measuring his loss. Spera v. Aucliotape Corporation,1 Conn. App. 629, 633, 446 A.2d 799 (1984). Applying these principles, the court must conclude that the burden on this element of damages has not been sustained.
Going on, Miller claims that New England has failed to pay all the commissions due him for the month of December 1988 and January 1989 pursuant to sections 3 and 14 of the Employment Agreement. At the end of the trial he withdrew so much of this claim as applies to December 1988 but presses the balance. Initially, we note the general rule that an insurance agent's right to commissions, salary or other compensation upon termination is governed by the terms of the agency contract. Mopper v. Circle Key Life Insurance Company, 172 N.W.2d 118 (Iowa 1969); Bushing v. Hart Keenan Ard Co. Inc., 407 N.Y.S.2d 295 (1978); Stockman's Insurance Agency Inc. v. Guarantee Reserve Life Insurance Company of Hammond, Indiana, 217 N.W.2d 455 (N.D. 1974), cert denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed 108
(1974); Cox v. Ohio National Life Insurance Co., 250 Or. 7,438 P.2d 998 (1968) See also 16A Appleman, Insurance Law and Practice 8960; 4 Couch Insurance Law [2 ed.] 26.374. The written agreement in this case provides in section 15 entitled "Termination" that "All compensation, including commissions, if any, shall cease upon termination of employment." That section also provides for termination upon: "Thirty (30) days written notice by either party to the other, which notice shall be delivered to the Employer [New England at its Cheshire office] and to Employee [Miller at his residence in Prospect]. During such period of thirty (30) days, the Employee shall be paid his regular compensation and shall continue to render his services to the Employer, if requested by the Employer. All compensation, including commissions, if any, shall cease upon the termination of employment. . . ." The credible evidence shows that Miller had admittedly made the actual decision to leave New England "mid-year" in 1988 sometime before he was given the copy of the CT Page 9135 "Captive Agent Agreement" several days before Christmas 1989. He said nothing of this to New England at that time. His view, however, of this proposed agreement apparently galvanized Miller into shortly thereafter telling Cassidy of his imminent departure. The evidence as to when Miller told Cassidy when he was leaving leads this court to conclude that he did so on January 6, 1989. In any event, Miller orally then informed Cassidy, who was the person at New England that he had his major contact concerning his status and circumstances since coming there in 1983. There was evidence when he did tell Cassidy he was leaving that he told Cassidy that he would be willing to remain with New England but that Cassidy declined that offer. Miller's employment with New England terminated on January 6, 1989. Under the written agreement, and particularly Section 15 "all compensation, including commissions, if any, . . ." ceased. Under Section 14 of this agreement Miller was to be paid "fifty (50%) percent of the commissions earned . . . which commission shall be paid monthly in arrears." By letter from Cassidy to Miller, dated January 31, 1989, which is an exhibit in the case, Cassidy set out certain items New England claimed Miller owed to it. Against the total of these items was deducted a credit designated as by Cassidy as "January Commissions $814.50". When questioned about this item of $814.50 at the trial Cassidy said that was the amount New England owed Miller if Miller did not owe New England anything. The trial on New England's complaint in this action was held, the decision rendered some months ago and this court found for Miller [and Golden] on the complaint and, therefore, that Miller did not owe New England any money. This court concludes that New England owes Miller $814.50 on this aspect of the case. New England owes Miller nothing more under the Employment Agreement.[5]
Accordingly, judgment on the first count of the counterclaim may enter in favor of Edward Miller against New England Insurance Agency Inc. in the amount of $1054.00 and judgment on the third count of the counterclaim may enter in favor of New England Insurance Agency, Inc.
ARTHUR H. HEALEY, STATE TRIAL REFEREE